No. 2--01--0554 

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

In re
 MARRIAGE OF MICHELLE   )  Appeal from the Circuit Court

FLANNERY,   )  of McHenry County.

   )

Petitioner-Appellee,   )  

   )       

and   ) No. 01--OP--67   

   )

KEVIN FLANNERY,   )  Honorable

   )  Sharon L. Prather,

Respondent-Appellant.   )  Judge, Presiding.

.

JUSTICE GROMETER delivered the opinion of the court:

Petitioner, Michelle Flannery, filed a petition for order of protection on behalf of her minor daughter, Amanda, against respondent, Kevin Flannery, Amanda's father.  Following a hearing, the trial court entered a plenary order of protection.  On appeal, respondent argues (1) the trial court erred in admitting Amanda's hearsay allegations of sexual abuse; (2) Amanda's hearsay statements lacked sufficient corroboration; (3) he was not given reasonable notice of Amanda's hearsay statements; (4) the trial court abused its discretion with respect to certain evidentiary rulings; and (5) the trial court's decision was against the manifest weight of the evidence and an abuse of discretion.  For the reasons that follow, we reverse.

I.  BACKGROUND

On March 14, 2001, petitioner filed a verified petition for an order of protection against respondent.  Petitioner alleged that her then three-year-old daughter told social worker Regina Lumpkins that "daddy put his finger in my buddy butt (vagina) and hurt me."  Among other things, petitioner requested that respondent stay away from Amanda and that she (petitioner) be granted "physical care" of the child.  A hearing on the petition commenced on April 3, 2001.  At the hearing, petitioner, petitioner's mother, petitioner's father, and Lumpkins testified about statements made to them by Amanda between August 2000 and April 2001 regarding the alleged sexual abuse.

At the close of petitioner's case, respondent moved to strike the hearsay statements attributed to Amanda.  Respondent asserted that there were three possible bases for the admission of the hearsay statements: (1) section 213.1 of the Illinois Domestic Violence Act of 1986 (Domestic Violence Act) (750 ILCS 60/213.1 (West 2000)); section 606(e) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/606(e) (West 2000)); or (3) section 8--2601 of the Code of Civil Procedure (Code) (735 ILCS 5/8--2601 (West 2000)).  However, respondent suggested that none of these statutory provisions applied to the instant case.  Section 213.1 of the Domestic Violence Act did not apply because that section pertains exclusively to hearsay statements made by high-risk adults with disabilities.  Respondent argued that neither section 606(e) of the Marriage Act nor section 8--2601 of the Code applied because both of those statutory provisions allow the admission of hearsay statements only if there is corroboration.  Respondent contended that there was no physical or other corroboration of the statements attributed to Amanda.  In addition, respondent pointed out that section 8--2601 of the Code requires that any statement have sufficient safeguards of reliability, which the hearsay statements in this case lacked.  In response, petitioner, relying on 
Daria W. v. Bradley W.
, 317 Ill. App. 3d 194 (2000), argued that section 606(e) of the Marriage Act allows the admission of a child's hearsay statements of abuse at an order-of-protection hearing.

The trial court ruled that the hearsay statements were admissible under section 606(e) of the Marriage Act.  The court commented that in 
Daria W.
 the appellate court "made it clear that it is [section] 606(e) that controls hearsay statements of a child dealing with abuse."  Accordingly, the trial court denied respondent's motion to strike Amanda's hearsay statements.  Respondent then presented his case.  At the close of the evidence, the court ruled that there was sufficient evidence to corroborate Amanda's hearsay statements.  Specifically, the court noted that there were two types of corroborating evidence, "physical evidence" and "testimony of the physical actions of the child when that child relayed statements of abuse."  The court issued a plenary order of protection against respondent for two years.  The order allowed respondent to have supervised visitation with Amanda.  This appeal followed.

II.  ANALYSIS

A.  Applicable Statute

Respondent first argues that the trial court erred in admitting Amanda's out-of-court statements under section 606(e) of the Marriage Act.  According to respondent, section 8--2601 of the Code (735 ILCS 5/8--2601 (West 2000)) governs the admissibility of a minor's hearsay statements in cases brought pursuant to the Domestic Violence Act
.  Section 8--2601 requires (1) the court to conduct a hearing to establish the reliability of the statements and (2) corroborative evidence of the act which is the subject of the statement if the child is unavailable to testify.  Respondent asserts that Amanda's statements were not admissible under section 8--2601 because the trial court failed to determine whether Amanda's statements were reliable.  Petitioner responds that the trial court properly admitted Amanda's hearsay statements pursuant to section 606(e) of the Marriage Act and 
Daria W.

Our task is to determine whether section 606(e) of the Marriage Act or section 8--2601 of the Code applies in assessing the admissibility of a minor child's hearsay statements where a party seeks an order of protection.  The resolution of this issue involves a question of statutory construction, a question of law that is subject to 
de novo
 review.  
Overlin v. Windmere Cove Partners, Inc.
, 325 Ill. App. 3d 75, 77 (2001).  The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature.  
Forest Preserve District v. Loren & Gisela Brown Family Trust
, 323 Ill. App. 3d 686, 692 (2001).  The best indication of the legislature's intent is the plain language of the statute.  
Westcon/Dillingham Microtunneling v. Walsh Construction Co. of Illinois 
, 319 Ill. App. 3d 870, 875 (2001).  After carefully reviewing the applicable statutory provisions, we conclude that section 8--2601 applies in determining the admissibility of Amanda's out-of-court statements of sexual abuse by respondent.

The Domestic Violence Act (750 ILCS 60/101 
et seq.
 (West 2000)) governs orders of protection.  Section 205(a) of the Domestic Violence Act (750 ILCS 60/205(a) (West 2000)) provides in pertinent part:

"
Any proceeding to obtain
, modify, reopen or appeal 
an order of protection
, whether commenced alone or in conjunction with a civil or criminal proceeding, 
shall be governed by the rules of civil procedure of this State
.  The standard of proof in such a proceeding is proof by a preponderance of the evidence, whether the proceeding is heard in criminal or civil court.  
The Code of Civil Procedure
 [(735 ILCS 5/1--101 
et seq.
 (West 2000))] and Supreme Court and local rules applicable to civil proceedings, as now or hereafter amended, 
shall apply, except as otherwise provided by this law
."  (Emphasis added.)  750 ILCS 60/205(a) (West 2000).

Initially, we note that section 8--2601 is a part of the Code of Civil Procedure.  Furthermore, use of the term "shall" ordinarily denotes a mandatory obligation.  
In re Marriage of Takata
, 304 Ill. App. 3d 85, 95 (1999).  Accordingly, we find that the plain language of section 205(a) mandates the application of section 8--2601 in assessing the admissibility of a minor's out-of-court statements in cases brought under the Domestic Violence Act
.

We point out that nothing in the Domestic Violence Act provides that the Marriage Act applies in determining the admissibility of a minor's hearsay statements in order-of-protection cases.  Notably, section 214(b) of the Domestic Violence Act (750 ILCS 60/214(b) (West 2000)) contains 18 subsections listing various remedies that a court may grant in issuing an order of protection.  Seven of those subsections refer to the Marriage Act in some capacity.  See 750 ILCS 60/214(b)(2), (b)(6), (b)(7), (b)(10), (b)(11), (b)(12), (b)(13) (West 2000).  However, none of those subsections require application of section 606(e) in a case brought under the Domestic Violence Act.

Section 214(b)(2) provides that, in deciding whether to grant exclusive possession of the marital residence to the petitioner, the court shall not be limited by the standards set forth in section 701 of the Marriage Act (750 ILCS 5/701 (West 2000)).  Section 214(b)(6) provides that a court may award temporary legal custody of the child to the petitioner in accordance with, 
inter alia
, the Marriage Act.  However, in her petition, petitioner did not seek "temporary legal custody" of Amanda.  Section 214(b)(7) pertains to visitation rights and provides that the court shall not be limited by section 607.1 of the Marriage Act (750 ILCS 5/607.1 (West 2000)) in deciding whether to grant visitation to the respondent.  Section 214(b)(10) provides that a court may award marital property to the petitioner only if a proper proceeding has been filed under the Marriage Act.  Similarly, section 214(b)(11) provides that a court may enter an order protecting the parties' marital property only if a proper proceeding has been filed under the Marriage Act.  Section 214(b)(12) allows the trial court to order the respondent to pay child support in accordance with the Marriage Act.  Finally, section 214(b)(13) allows the court to order the respondent to pay certain losses as authorized by section 501(a)(3) of the Marriage Act (750 ILCS 5/501(a)(3) (West 2000)).

Conceding that she did not seek "temporary legal custody" of Amanda, petitioner nevertheless notes that she did request "physical care" of the minor in her petition.  Petitioner equates "physical care" with the term "temporary legal custody" as found in section 214(b)(6) of the Domestic Violence Act.  Thus, she posits that the trial court correctly determined that provisions of the Marriage Act, including section 606(e), governed this case.  We disagree.

Petitioner's contention ignores another principle of statutory construction.  It is well settled that a statute should be construed so that no word or phrase is rendered superfluous or meaningless.  
Khan v. Van Remmen, Inc.
, 325 Ill. App. 3d 49, 61 (2001); 
Village of Mundelein v. Franco
, 317 Ill. App. 3d 512, 520 (2000); 
People v. Lueloff
, 161 Ill. App. 3d 432, 435 (1987).  The legislature has differentiated between "temporary legal custody" and "physical care."  Section 214(b)(5) of the Domestic Violence Act (750 ILCS 60/214(b)(5), (b) (6) (West 2000)) expressly provides that, in issuing an order of protection, a court may award "physical care and possession of the minor child."  Unlike section 214(b)(6) of the Domestic Violence Act, which governs the remedy of "temporary legal custody," section 214(b)(5), by its own terms, does not incorporate any provisions of the Marriage Act.  Obviously, the legislature meant to distinguish between "physical care and possession" and "temporary legal custody" or it would not have included both provisions in the statute.  Adopting petitioner's position would require us to ignore section 214(b)(5).

We recognize that in 
Daria W.
, 317 Ill. App. 3d 194, the Third District concluded that section 606(e) of the Marriage Act controlled the admission of a child's hearsay statement in an order-of-protection case.  
Daria W.
, 317 Ill. App. 3d at 200.  The court reasoned that section 606(e) of the Marriage Act was more specific than section 8--2601 of the Code because (1) section 606(e) addresses the admission of hearsay statements of a minor child when the alleged abuser is the parent and (2) section 606(e) applies to hearings concerning visitation with the child.  
Daria W.
, 317 Ill. App. 3d at 199-200.  However, the 
Daria W.
 court never discussed the effect of section 205(a) of the Domestic Violence Act.  While petitioner points out that the trial court was bound to follow 
Daria W.
, we are not required to follow a decision rendered by another district of this appellate court.  See 
Appelhans v. McFall
, 325 Ill. App. 3d 232, 239 (2001).  Therefore, to the extent that 
Daria W.
 differs with our conclusion in this case, we decline to follow it.

We now turn to the statutory provisions at hand.  The trial court found Amanda's hearsay statements admissible under section 606(e) of the Marriage Act, which provides:

"Previous statements made by the child relating to any allegations that the child is an abused or neglected child within the meaning of the Abused and Neglected Child Reporting Act, or an abused or neglected minor within the meaning of the Juvenile Court Act of 1987, shall be admissible in evidence in a hearing concerning custody of or visitation with the child.  No such statement, however, if uncorroborated and not subject to cross-examination, shall be sufficient in itself to support a finding of abuse or neglect."  750 ILCS 5/606(e) (West 2000).

We, on the other hand, have concluded that section 8--2601 is applicable to cases seeking an order of protection under the Domestic Violence Act.  Section 8--2601 of the Code provides:

"An out-of-court statement made by a child under the age of 13 describing any act of child abuse or any conduct involving an unlawful sexual act performed in the presence of, with, by, or on the declarant child, or testimony by such of an out-of-court statement made by such child that he or she complained of such acts to another, is admissible in any civil proceeding, if: (1) the court conducts a hearing outside the presence of the jury and finds that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and (2) the child either: (i) testifies at the proceeding; or (ii) is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement."  735 ILCS 5/8--2601 (West 2000).

While both statutory provisions require corroboration, section 8--2601 of the Code adds the further requirement that, in order for the statements to be admissible, the court must conduct a hearing and find sufficient indicia of reliability.  See 
In re Marriage of Rudd
, 293 Ill. App. 3d 367, 373-74 (1997) (noting that in order for a child's hearsay statements to be admissible under section 8--2601 of the Code, the court must conduct a reliability hearing and the statements must be corroborated).  In 
Idaho v. Wright
, 497 U.S. 805, 111 L. Ed. 2d 638, 110 S. Ct. 3139 (1990), the Supreme Court held that the "indicia of reliability" requirement may be met (1) where the statement falls in a " 'firmly rooted hearsay exception' " or (2) where it is supported by " 'a showing of particularized  guarantees of trustworthiness.' " 
Wright
, 497 U.S. at 816, 111 L. Ed. 2d at 653, 110 S. Ct. at 3147, quoting 
Ohio v. Roberts
, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608, 100 S. Ct. 2531, 2539 (1980).  This court has applied the 
Wright
 guidelines for reliability in assessing the admissibility of hearsay statements under section 115--10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115--10 (West 2000)), the criminal counterpart to section 8--2601.  See 
People v. Edwards
, 224 Ill. App. 3d 1017, 1028-29 (1992).  As a result, such guidelines also apply in assessing the admissibility of hearsay statements under section 8--2601.

As discussed, the trial court found that Amanda's statements were admissible under section 606(e) of the Marriage Act.  Section 606(e) does not require the trial court to conduct a reliability hearing.  Thus, it necessarily follows that the trial court did not consider whether the "time, content, or circumstances of the statement[s] provide sufficient safeguards of reliability" as required by section 8--2601 of the Code.

Petitioner claims that the court's failure to hold a reliability hearing does not require reversal because the record suggests that the court considered the time, content, and circumstances under which Amanda's statements were made.  Petitioner notes that, at the close of the evidence, the court stated that "the hearsay statements of the child in this case were clear and concise to various different people.  There were some variants of those statements, but the main elements were always clear and consistent."  Petitioner reads these comments out of context.  These remarks related to the court's discussion regarding whether there was any evidence to corroborate Amanda's hearsay statements.  In any event, to the extent that the court's remarks relate to the reliability of Amanda's hearsay statements, we find that they only pertain to the statements' content as opposed to the time and circumstances under which they were made.

Ordinarily, we would remand the proceeding so that the trial court could hold a reliability hearing.  However, respondent raises the additional argument that Amanda's hearsay statements lacked corroboration.  As noted above, both section 606(e) of the Marriage Act and section 8--2601 of the Code require corroboration of the child's hearsay statements where the minor is unavailable to testify.  If we find that Amanda's hearsay statements lack corroboration, a remand would be unnecessary.  

B.  Corroboration

As previously discussed, the trial court found two types of corroborating evidence: (1) "physical evidence" and (2) "testimony of the physical actions of the child when that child relayed statements of abuse."  Respondent argues that there was insufficient corroboration of Amanda's hearsay statements.  Respondent's argument is twofold.  First, he claims that there was insufficient physical evidence to corroborate Amanda's hearsay statements.  Second, he argues that testimony of the physical actions of the child upon relaying statements of abuse does not constitute corroboration.  We first address whether there was sufficient physical evidence to corroborate Amanda's hearsay statements.

In 
In re A.P.
, 179 Ill. 2d 184 (1997), our supreme court discussed the evidence necessary to corroborate a minor's hearsay statement of sexual abuse.  The purpose of presenting corroborating evidence, the court wrote, was to balance the welfare interests of minors and the rights of those accused of abuse or neglect.  
A.P.
, 179 Ill. 2d at 197.  The court noted that sufficient corroboration requires more than witnesses testifying that a minor related instances of abuse to them.  
A.P.
, 179 Ill. 2d at 198.  The court stated:

"[C]orroborating evidence of *** abuse or neglect requires there to be independent evidence which would support a logical and reasonable inference that the act of abuse or neglect described in the hearsay statement occurred.  In essence, corroborating evidence is evidence that makes it more probable that a minor was abused or neglected.  The form of the corroboration will vary depending on the facts of each case and can include physical or circumstantial evidence."  
A.P.
, 179 Ill. 2d at 199.

In 
A.P.
, the court concluded that the minor's hearsay statements were sufficiently corroborated by the medical evidence presented.  
A.P.
, 179 Ill. 2d at 199.  In 
A.P.
, the medical evidence showed that the minor's hymen was torn, it was stretched past its point of elasticity, and its opening was larger than normal for a girl A.P.'s age.  
A.P.
, 179 Ill. 2d at 199.  Based on this evidence, the examining physician concluded that A.P.'s vagina had been penetrated by a finger or foreign object approximately two weeks before the examination.  
A.P.
, 179 Ill. 2d at 199-200.  The supreme court held that this evidence was sufficient to corroborate A.P.'s hearsay statements of sexual abuse.  
A.P.
, 179 Ill. 2d at 200.

A.P.
 involved the interpretation of what is now section 2--18(4)(c) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2--18(4)(c) (West 2000)).  Section 2--18(4)(c) governs the admission of a minor's out-of-court statements regarding allegations of abuse or neglect.  Like section 2--8601 of the Code and section 606(e) of the Marriage Act, section 2--18(4)(c) of the Juvenile Court Act requires corroboration of the child's hearsay statements.  Given the similarity of these three statutory provisions, we find the reasoning of 
A.P.
 applicable here.

In the instant case, the only testimony regarding Amanda's physical condition came from Dr. Michelle Reinstein, a board-certified pediatrician practicing at Pediatric Care Associates.  Petitioner testified that she took Amanda to see Dr. Reinstein in August 2000, after Amanda allegedly had an unusual conversation with petitioner's mother.  However, Reinstein testified that petitioner brought Amanda to her office on July 26, 2000, for treatment of vaginal redness.  Reinstein stated that she is mandated by state law to report any allegations of physical or sexual abuse.  Accordingly, whenever a child suffers from vaginal redness, she asks the parent if he or she suspects any inappropriate touching.  Reinstein asked petitioner whether she suspected any inappropriate touching with respect to Amanda.  Petitioner responded in the negative.

Reinstein further testified that the presence of vaginal redness does not indicate sexual abuse and that vaginal redness is "quite common" among 2½-year-old girls.  Reinstein explained that in Amanda's age group there are a lot of things that can cause vaginal redness.  Reinstein elaborated that "[a] young lady starting to potty train can have some redness if [she does not] wipe well, and a lady touching herself, putting things down below.  Not--It's not specific to abuse."

Reinstein testified that she examined Amanda by spreading the child's labia and inspecting Amanda's hymenal ring and labia with a bright light.  Except for the vaginal irritation, Reinstein was unable to find anything abnormal.  Reinstein noted that there was no distortion or deformity of the labia, and everything up to the hymenal ring "was intact and appropriate."  According to Reinstein, there was no indication that Amanda had been sexually abused.  Reinstein admitted that she had the capacity to perform only an external digital examination of Amanda.  An internal examination would require a visit with a specialist.  Reinstein diagnosed Amanda with "vaginal irritation"--in layman's term, "diaper rash." Reinstein prescribed Lotrimin because Amanda had a history of yeast infections.  She also recommended that Amanda return for a visit the following week.  However, petitioner did not bring Amanda in for a follow-up examination.

Amanda did not return to Pediatric Care Associates until December 6, 2000.  At that time, Reinstein conducted Amanda's three-year checkup.  During Amanda's examination, petitioner did not raise any concerns regarding sexual abuse.  As part of the checkup, Reinstein examined Amanda's vaginal area by spreading the labia.  Reinstein did not find anything unusual.  In particular, Reinstein noted that there was no redness and there was no indication that indicated Amanda had been sexually abused.

We conclude that this medical testimony is insufficient to corroborate Amanda's hearsay statements of sexual abuse.  The evidence demonstrates that Amanda's July 26, 2000, visit to Dr. Reinstein was for the treatment of a diaper rash.  When asked by Dr. Reinstein, petitioner denied any concerns regarding the sexual abuse of Amanda.  More importantly, Dr. Reinstein's examination revealed no physical evidence of abuse.  At Amanda's December checkup, petitioner voiced no concern of abuse, and Dr. Reinstein did not find any signs of abuse at that time.  Based on this evidence, we do not believe that this evidence makes it more probable that Amanda was sexually abused.

The trial court also found that testimony regarding Amanda's physical manifestations when she related the allegations of sexual abuse constituted sufficient corroboration.  Although the trial court did not specify which physical manifestations it relied upon, we have combed the record and note the following.

Petitioner testified that sometime in August 2000 Amanda pointed to her genitals and told petitioner that "Daddy--daddy put his finger there and hurt me."  Petitioner also testified that, as of April 2001, Amanda had been toilet trained for a little more than a month.  However, according to petitioner, Amanda started having accidents at the end of February.  Petitioner further recounted that for about a year Amanda had been waking up in the middle of the night and that the night prior to her testimony Amanda woke up crying but would not tell petitioner what was wrong.  Eventually, Amanda placed her hand down her pants and stated, "This is what daddy did."

Petitioner's mother, Joanne Mitchell, testified that late in November 2000 she was changing Amanda's diaper when Amanda stated, "that hurts."  Mitchell asked Amanda why, and Amanda responded, "because my daddy puts his finger in there and hurts me."  Following these statements, Amanda put her hand on her vagina.  A similar incident occurred late in December 2000.  Mitchell also recalled an incident on February 17, 2001, as she was preparing Amanda for bed.  While in the bathroom, Mitchell took off Amanda's clothes and, using a washcloth, wiped down the child's hands and face.  Mitchell then placed Amanda on the floor to wash the front of her body and her legs.  Mitchell testified that when she attempted to wash Amanda's private parts, the girl started to shake and stated, "please don't hurt me like daddy does."

Social worker Regina Lumpkins conducted a sexual-abuse-victim assessment of Amanda on March 13, 2000.  Upon entering Lumpkins's office, Amanda was very excited.  However, a short time later, Amanda became quiet and stuck her fingers in her mouth, telling Lumpkins that she has more toys at home than Lumpkins has in her office.  Lumpkins testified that, during a body-part-identification assessment with Lumpkins, Amanda stated, "my daddy puts his finger in my buttie butt and it hurts."  Amanda then began rubbing her genital area with her hands.  Lumpkins described Amanda's reaction at the time as "scared."  According to Lumpkins, Amanda "pulled back" and was "hesitant."  Amanda also told Lumpkins that the incident happened in the bathtub and that it occurred five times.  Amanda then told Lumpkins she no longer wished to talk about it.  Amanda proceeded to another part of the room, turned away from Lumpkins, stuck her fingers in her mouth, and became very quiet.  About a minute later, Amanda said, "you're going to be in big trouble."  Lumpkins asked Amanda to whom she was referring, and Amanda said she did not want to talk about it.  Lumpkins described Amanda's behavior as "a very different way of reacting to me or interacting with me."  A short time later, Amanda resumed playing with Lumpkins.  Lumpkins attempted to engage Amanda in conversation again, asking her if there were any other incidents.  Amanda responded that she did not remember.  Amanda then reiterated that she did not want to talk about it anymore.  At that point, Lumpkins ended the assessment.

The following day, on March 14, 2000, Lumpkins conducted a videotaped interview of Amanda.  When Lumpkins asked Amanda about respondent, she indicated that she did not want to talk about him.  Because Lumpkins was sitting beside Amanda, she was unable to observe her face.  However, Lumpkins did report that the child was fidgeting at the time.

With respect to Amanda's physical actions, respondent urges that such evidence does not constitute corroboration within the meaning of section 8--2601 of the Code.  Alternatively, assuming that such evidence does constitute corroboration, respondent argues that the trial court's finding was against the manifest weight of the evidence.

We find that this testimony regarding Amanda's physical manifestations is insufficient to corroborate the child's hearsay statements of sexual abuse under either section 606(e) of the Marriage Act or section 8--2601 of the Code.  In 
A.P.
, the supreme court stated that a minor's hearsay statement of abuse or neglect must be either subject to cross-examination or corroborated by other evidence.  
A.P.
, 179 Ill. 2d at 196.  Here, there was no cross-examination.  As a result, there must be some corroboration of Amanda's hearsay statements.  Corroborating evidence requires the presence of "independent evidence which would support a logical and reasonable inference that the act of abuse or neglect described in the hearsay statement occurred."  
A.P.
, 179 Ill. 2d at 199.

As a preliminary matter, we point out that we have been unable to find, nor has petitioner cited, any case law holding that the physical conduct that accompanied a child's hearsay statement of abuse or neglect is sufficient, by itself, to corroborate the child's out-of-court statement.  Moreover, this court has previously determined that evidence that is itself hearsay cannot provide the corroboration required by the statute.  
In re Alba
, 185 Ill. App. 3d 286, 290 (1989)
.  Although hearsay is defined as testimony of an out-of-court "statement" that is offered to establish the truth of the matter asserted (
People v. Garcia
, 195 Ill. App. 3d 621, 626 (1990)), we have applied this definition to physical manifestations as well.  See 
Alba
, 185 Ill. App. 3d at 290 (finding that child's drawing indicating where her father placed his penis was insufficient to corroborate the child's hearsay statement of sexual abuse; the drawing constituted hearsay because it was offered to establish the truth of the matter asserted).  In this case, Amanda's physical actions were offered to prove petitioner's claim that Amanda was sexually abused.  Accordingly, the actions fit within the definition of hearsay and could not, by themselves, corroborate Amanda's out-of-court statements of sexual abuse.  A contrary holding would effectively nullify the corroboration requirement.  Thus, we hold that testimony regarding the physical manifestations that accompany a child's hearsay statements of abuse is insufficient to corroborate the out-of-court statements when the child's conduct is the only corroborative evidence presented.  Consequently, we must reverse the judgment of the trial court.

Petitioner cites two cases, which she claims dictate a contrary result.  Both cases involved what is now section 2--18(4)(c) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2--18(4)(c) (West 2000)).  As previously noted, section 2--18(4)(c) governs the admission of a minor's out-of-court statements regarding allegations of abuse or neglect.  Further, like section 2--8601 of the Code and section 606(e) of the Marriage Act, section 2--18(4)(c) of the Juvenile Court Act requires the corroboration of the child's hearsay statements.  After a careful examination, we find petitioner's reliance on these cases unpersuasive. 

Petitioner first relies on 
In re K.L.M.
, 146 Ill. App. 3d 489 (1986).  In 
K.L.M.
, the court found that the minor child's hearsay statements of sexual abuse by her father were corroborated by (1) testimony of a caseworker for the Department of Children and Family Services and a psychotherapist that the girl was anxious when she related the allegations of abuse; (2) the testimony of the child's father, who indicated that the four-year-old had limited opportunity to have learned about the sexual matters that she purported to have described; (3) testimony that the minor's mother had no opportunity to arrange for the child to provide false testimony; and (4) testimony that the girl had a skin irritation in the genital area.  
K.L.M.
, 146 Ill. App. 3d at 493-94.  Importantly, however, the court pointed out that the child was able to describe semen.  
K.L.M.
, 146 Ill. App. 3d at 494.  The court believed that the child would have been unable to describe semen unless she had seen it and that it would have been unlikely that she had seen semen unless the events she related had actually taken place.

Petitioner also cites 
In re C.C.
, 224 Ill. App. 3d 207 (1991).  
C.C.
 involved the alleged sexual abuse of two minors, R.C. and C.C., by their father.  In 
C.C.
, the court found that the minors' out-of-court statements of sexual abuse were corroborated by testimony that C.C. had used anatomically correct puppets to recreate a "secret game" he played with R.C. and his father.  Moreover, the five-year-old C.C. was able to describe semen, and there was testimony that the behavior of C.C. and R.C. began to change while living with their father.  For instance, C.C. began crying over insignificant things, he wet his pants every day, he became less affectionate, he did not want to be touched, he stopped doing schoolwork, and he was hard to motivate.  The seven-year-old R.C. frequently wet his pants, had bowel movements in his pants, had frequent tantrums, often cried and whined, and would not let anyone hug him.  Further, a medical team interviewed, observed, and psychologically tested both boys.  The team then compiled a "composite picture" of the children and concluded that they had been sexually abused.  Based on this evidence, the court concluded that it was more probable than not that the children were sexually abused by their father.  
C.C.
, 224 Ill. App. 3d at 215.

We find petitioner's reliance on 
K.L.M.
 and 
C.C.
 misplaced.  In both of those cases there was a myriad of factors beyond the children's physical manifestations that, when taken together, could support a finding of corroboration.  Here, the trial court found only two factors corroborated Amanda's hearsay statements.  However, we have already concluded that there was no physical evidence to corroborate Amanda's hearsay statements of sexual abuse.  Thus, we are left only with Amanda's physical manifestations.  As noted above, there is no authority supporting a finding of corroboration based on the child's physical conduct alone, and we decline to impose such a finding here.

Respondent raises several additional issues.  For instance, he argues that there was insufficient corroboration concerning the identity of the alleged abuser.  However, since we have found that there is insufficient evidence to corroborate Amanda's out-of-court statements regarding the acts of abuse, we need not address whether there was sufficient evidence to corroborate the identity of the alleged abuser.  Respondent also claims that several of the trial court's evidentiary rulings resulted in reversible error.  However, our resolution of this case renders these issues moot.

III.  CONCLUSION

For the aforementioned reasons, we reverse the judgment of the circuit court of McHenry County.

Reversed.

McLAREN and GEIGER, JJ., concur.