# Illinois Official Reports

## Appellate Court

---

### *Countryman v. Racy*, 2017 IL App (3d) 160379

---

| | |
|---|---|
| Appellate Court Caption | TRAVAS COUNTRYMAN, Petitioner-Appellee, v. NORMAN RACY, Respondent-Appellant. |
| District & No. | Third District<br>Docket No. 3-16-0379 |
| Filed | August 9, 2017 |
| Decision Under Review | Appeal from the Circuit Court of McDonough County, Nos. 14-D-7, 15-OP-108, the Hon. William E. Poncin, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Norman Racy, of Macomb, appellant, *pro se*.<br><br>Anne M. Burton, of Burton Law Office, LLC, of Macomb, for appellee. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Justices Schmidt and Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1     Petitioner Travas Countryman sought an order of protection against respondent Norman Racy, the stepfather of Countryman's three daughters. In the petition, Countryman alleged that Racy physically and sexually abused the then seven- and four-year-old girls. Following a hearing on the petition, the trial court entered the plenary order. Racy appealed. We affirm.

¶ 2                                                                    FACTS

¶ 3     In August 2014, petitioner Travas Countryman filed a verified petition for an emergency order of protection in Henderson County against his former wife, Rebecca Racy (Rebecca), and her husband, respondent Norman Racy. The petition included allegations of physical and sexual abuse against Racy concerning Countryman's two oldest daughters, S.C. and J.C. The petition stated that Countryman picked up his children for visitation on August 21, 2014, and performed the usual routine of checking them for bruises, lice, and cleanliness. Both S.C. and J.C. had bruises on various parts of their bodies. Countryman called the Stronghurst police department, and in response to responding Officer Arbry Vancil's questions, S.C. said Rebecca scratched her and Racy hit her. Later, when Countryman's sister was helping S.C. change into her pajamas, she noticed S.C.'s vagina was "very very very red and secreting" and called for Countryman. Countryman's mother also observed S.C., who said that "Will [Racy] just stuck his finger in it & wiggled it & it hurt." Countryman again called the police. Vancil responded and suggested that Countryman check his other daughters, which examination revealed that J.C.'s vagina was also red and swollen. Per Vancil's instructions, Countryman took both girls to the Macomb Hospital emergency room, where they were examined and Countryman was referred to the Pediatric Resource Center (PRC) in Peoria. PRC's Maureen (Molly) Hoffman interviewed S.C.

¶ 4     On August 24, 2014, the Henderson County trial court entered an emergency order of protection against Racy. The order barred Racy from having any contact with the three children. The order of protection was extended in September 2015. In October 2015, the case was transferred from Henderson to McDonough County and the order of protection was again extended.

¶ 5     In November 2015, Racy filed a motion to vacate or modify the emergency order of protection, arguing that S.C. had been found to be an incompetent witness in a prior order of protection proceeding instigated by Countryman, also alleging physical abuse of the children by Racy. Attached to the motion was a copy of the Department of Children and Family Services (DCFS) report and investigation of the prior abuse allegation, which concluded as unfounded. Racy's motion was heard and denied. The order of protection was extended several more times and modified to provide that Countryman would be awarded immediate custody if Racy were to move back in with Rebecca and the children.

¶ 6     In February 2016, a hearing took place on Countryman's petition. There is no report of proceedings, but the common-law record indicates that testimony was offered by PRC's Hoffman, Countryman, his mother, and Vancil. On March 1, 2016, the trial court entered a plenary order of protection, to expire on March 1, 2018. The order prohibited Racy from having any contact with Countryman's children. Racy moved for a retrial, arguing that Hoffman's testimony and report constituted inadmissible hearsay and should not have been admitted and considered by the trial court. Following a hearing, the trial court denied the

motion, finding that Hoffman's testimony and report were admissible and that Countryman submitted sufficient evidence to support his petition. Racy timely appealed.

¶ 7                                                    ANALYSIS

¶ 8       On appeal, Racy argues that the trial court erred when it admitted Hoffman's testimony, which he claims was inadmissible hearsay. First, Racy submits the trial court used the wrong statute to admit the hearsay. Next, he asserts that he was not provided notice of intent to use the hearsay as statutorily required. His third claim is that admission of the hearsay was improper where S.C. was not unavailable to testify. Racy further argues that the trial court failed to hold a required hearing to determine the reliability of S.C.'s statements. Finally, Racy submits that Hoffman's testimony was not sufficiently corroborated and should not have been admitted.

¶ 9       We begin with Racy's assertion that the trial court should have used the admissibility requirements under the Illinois Domestic Violence Act of 1986 (Domestic Violence Act) (750 ILCS 60/101 *et seq.* (West 2016)) and not the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/101 *et seq.* (West 2016)). This court reviews *de novo* a question of which statute applies. *Bouton v. Bailie*, 2014 IL App (3d) 130406, ¶ 7.

¶ 10      The Domestic Violence Act directs that proceedings under it be governed by the Code of Civil Procedure (Civil Code) (735 ILCS 5/1-101 *et seq.* (West 2016)), which in turn sets forth two requirements for the admission of hearsay statements of a minor victim of sexual abuse. 750 ILCS 60/205(a) (West 2016); 735 ILCS 5/8-2601(a) (West 2016). First, the court must conduct a hearing outside the jury's presence to determine reliability based on the time, content, and circumstances of the statement. 735 ILCS 5/8-2601(a) (West 2016). The second requirement is the child's testimony or, if the child is unavailable, sufficient corroboration of the conduct as alleged in the hearsay statement. 735 ILCS 5/8-2601(a) (West 2016).

¶ 11      The Marriage Act provides that a child's hearsay statement about abuse is admissible in a hearing regarding either custody or visitation. 750 ILCS 5/606(e) (West 2014) (now 750 ILCS 5/606.5(c) (West 2016)). Admission under section 606(e) requires the statement to be either corroborated and subject to cross-examination or "sufficient in itself to support a finding of abuse." 750 ILCS 5/606(e) (West 2014).

¶ 12      Racy relies on *In re Marriage of Flannery*, 328 Ill. App. 3d 602 (2002), as support for his claim that the court used the wrong statute in admitting S.C.'s statements. In that case, the Second District found the applicable statute was the Civil Code as set forth in the Domestic Violence Act. *Id.* at 606. The petitioner-appellee sought only physical care of the child in her petition for an order of protection and the *Flannery* court reasoned that section 606(e) did not apply because neither visitation nor custody were at issue. *Id.* at 606-07. The court acknowledged this court's decision in *Daria W. v. Bradley W.*, 317 Ill. App. 3d 194 (2000), finding section 606(e) applicable to claims of abuse by a parent but criticized this court's failure to discuss the Civil Code requirements. *Flannery*, 328 Ill. App. 3d at 607-08.

¶ 13      In *Daria*, this court considered the same issue regarding which statute to apply. *Daria*, 317 Ill. App. 3d at 198-99. This court found that section 606(e) governed as the more specific statute concerning hearsay statements about abuse by a parent. *Id.* at 199. In reaching its decision, the court noted that section 606(e) expressly stated that it was applicable to situations when a parent is accused of abuse and matters of visitation and, by extension, custody are at issue. *Id.* at 199-200.

¶ 14    We choose to follow the decision in *Daria* because the facts and reasoning in that case are more aligned with the circumstances here. The order of protection entered against Racy impacted the children's custody and continues to affect it during the pendency of the order of protection. Countryman sought and received immediate custody of the children when the emergency order of protection was entered. When the order of protection was extended in December 2015 and thereafter, the trial court specified that if Racy returned to the marital home with Rebecca, Countryman would receive immediate custody of the three girls. Because Rebecca is the custodial parent, any participation by Racy in family life necessarily influences custody and visitation. We find section 606(e) is the applicable statute and that the trial court did not err when it found the Marriage Act applied to the admission of S.C.'s hearsay statements.

¶ 15    Based on our determination that the Marriage Act was the applicable statute, we reject Racy's claim that the trial court was required to conduct a hearing to determine the reliability of S.C.'s hearsay statements. Section 606(e) did not require a hearing on reliability, and one is not needed in a bench trial. *In re Marriage of Gilbert*, 355 Ill. App. 3d 104, 112 (2004) (comparing section 8-2601(a)'s hearing requirement with lack of requirement in section 606(e)).

¶ 16    We are able to determine the above issues as matters of law based on the trial court's June 20, 2016, order denying Racy's motion for a retrial. In the order, the trial court stated that it relied on *Daria* and rejected *Flannery*. The court also found that Hoffman's testimony was credible, reliable, and subject to cross-examination and that there was sufficient corroboration for the use of her report. It pointed to specific testimony by Hoffman that supported entry of the order of protection.

¶ 17    Aside from the June 20 order, this court has insufficient information to determine the other issues Racy raises on appeal. There is no report of proceedings. In his briefs, Racy cites to and maintains that a bystanders' report has been filed on appeal. There is no record the bystanders' report was filed in this court, and the trial court certified only one volume of a common-law record as the complete record. Because there is no report of proceedings or bystanders' report, we do not know what the testimony was at the hearing and cannot review it. We cannot determine whether the complained-of testimony was admissible or inadmissible. Similarly, the other issues Racy raised on appeal rely on information from the trial court proceeding that is not before this court. It was Racy's obligation to supply this court with an adequate record on appeal. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Absent that record, we will presume that the trial court conformed its decision to the law and based it on sufficient facts. *Id.* at 392. We find the trial court did not err in entering a plenary order of protection against Racy.

¶ 18    For the foregoing reasons, the judgment of the circuit court of McDonough County is affirmed.

¶ 19    Affirmed.