# Illinois Official Reports

## Appellate Court

---

### *Trinidad C. v. Augustin L.*, 2017 IL App (1st) 171148

---

| | |
|---|---|
| Appellate Court Caption | TRINIDAD C., Petitioner-Appellee, v. AUGUSTIN L., Respondent-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-17-1148 |
| Filed | November 21, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-OP-72812; the Hon. Megan E. Goldish, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Mevorah Law Offices LLC, of Bloomingdale (Matthew B. Sperry, of counsel), for appellant.<br><br>Life Span, of Chicago (Denice Wolf Markham and Ishughun F. Orkar, of counsel), and Dentons US LLP, of Washington, D.C. (Drew W. Marrocco and Levon Golendukhin, of counsel), for appellee. |
| Panel | JUSTICE MASON delivered the judgment of the court, with opinion.<br>Presiding Justice Neville and Justice Hyman concurred in the judgment and opinion. |

**OPINION**

¶ 1    Respondent Augustin L. appeals the trial court's issuance of a plenary order of protection in favor of petitioner, Trinidad C., and her three minor children. Augustin asserts that his stepdaughter L.C.'s outcry of sexual abuse that served as a basis for the order of protection should have been excluded as inadmissible hearsay. Because we find that the trial court did not abuse its discretion in declaring L.C. unavailable to testify and that her outcry of sexual abuse was reliable and corroborated by other independent evidence, we affirm the plenary order of protection.

¶ 2                                      BACKGROUND

¶ 3    Trinidad filed a petition for an order of protection on May 3, 2016, on behalf of herself and her three minor children: L.C., P.L., and R.M. In the petition, Trinidad alleged that Augustin sexually molested five-year-old L.C., which Trinidad reported to the Department of Children and Family Services (DCFS) on April 29, 2016, and that all of her children were confused and affected emotionally. L.C. was Augustin's stepdaughter at the time of the incident.

¶ 4    During the evening of April 28, Trinidad left the home to do laundry. Augustin stayed with L.C. and P.L. The following morning, Trinidad woke L.C. to change and clean her before school because L.C. had not bathed the day before. Trinidad noticed that L.C.'s vaginal area was very red. Trinidad asked L.C. if anyone touched her in her private area, and L.C. covered her face. Trinidad asked her a second time, and L.C. told her that she was very afraid to tell her the truth. L.C. then told Trinidad that Augustin touched her in the vaginal area. L.C. said it happened when Trinidad was at school and doing laundry. Trinidad asked L.C. why she did not tell her and L.C. said because Augustin told her that if she told anyone what happened, he was going to leave the house and they would be without a father. Trinidad described L.C. as being very afraid. Trinidad noticed a hole in L.C.'s leggings "down there" roughly the size of two fingers. Trinidad finished changing L.C. and took her to school.

¶ 5    Vanessa Salcedo was L.C.'s prekindergarten teacher for approximately two school years: 2014-15 and 2015-16. When Trinidad arrived at school with L.C. on April 29, 2016, she told Salcedo about her conversation with L.C. Salcedo called DCFS. With Salcedo's help, Trinidad filled out a police report.

¶ 6    Ada Perez-Almuhtaseb, an investigator for DCFS, arrived at L.C.'s school the same day and interviewed Trinidad at 11:30 a.m., L.C. at 11:50 a.m., and Salcedo at 12:20 p.m. Perez-Almuhtaseb interviewed each individual separately, and no one else was present during the interviews.

¶ 7    Trinidad stated during the interview with Perez-Almuhtaseb that she left the house the night before to do laundry and Augustin stayed with L.C. and P.L. Trinidad also related discovering the redness in L.C.'s vaginal area and told Perez-Almuhtaseb about her conversation with her daughter and reporting the incident to Salcedo.

¶ 8    During Perez-Almuhtaseb's interview with L.C., L.C. accurately differentiated between good and bad touches, and she also accurately identified her private parts calling her vagina "cola." When asked if she had ever been touched on her private parts, L.C. told Perez-Almuhtaseb that her "dad" touched her on her "cola" when they were at home. L.C.'s

mother was not home at the time because she was doing laundry, and Augustin was babysitting her and her brother. She was watching television in her parents' bedroom, and her brother was sleeping. L.C. told Perez-Almuhtaseb that when Augustin touched her, he moved his hand from side to side and that this happened while they were in her parents' bedroom. Augustin told L.C. not to tell anyone or else he would have to leave the home. L.C. did not want that to happen.

¶ 9     Finally, Perez-Almuhtaseb interviewed Salcedo as follow-up to the conversation they had when she reported the incident to DCFS.

¶ 10     Later that day at around 6 p.m., Trinidad took L.C. to see a doctor concerning her vaginal redness. According to Trinidad, the doctor stated that the redness could have been hygiene related because L.C. might not be cleaning herself properly.

¶ 11     Approximately a week later on May 5, 2016, Rebekah Stevenson, a forensic interviewer at the Chicago Advocacy Center, conducted an interview of five-year-old L.C., which was recorded as a victim sensitive interview (VSI). L.C. stated that she lived with her mom, sister, and older brother but not with her "dad," Augustin, "because he went on vacation." Before L.C. described the incident involving Augustin, Stevenson asked L.C. questions about telling the truth and lies, and L.C. accurately identified whether a statement was the truth or a lie.

¶ 12     During the interview, L.C. stated that Augustin touched her in her vaginal area when they went to the garden. L.C. elaborated that they were in the garage inside the house on a lower level where Augustin looks for his things. L.C.'s younger brother was outside making bubbles with his Spiderman, and L.C.'s mother was inside the house eating. Augustin stood in front of L.C., who was also standing. Augustin touched and rubbed L.C. in her vaginal area with his hand over her clothes. L.C. demonstrated Augustin's touch by rubbing her hand up and down her vaginal area, and also patted an arm rest to demonstrate how Augustin's hand moved. L.C. told Stevenson that Augustin touched her one time when she was five years old. Augustin did not touch L.C. anywhere else and did not ask her to touch him or do anything to him.

¶ 13     L.C. told Stevenson she did not tell anyone what happened because Augustin told her not to say anything and, if she did, he would leave the house. L.C. later decided to tell her mom what happened because her mom would get mad if she told a lie. L.C. stated that she was scared that "my daddy will leave the house and he already left the house."

¶ 14     When the hearing on the order of protection commenced, Trinidad filed a motion *in limine* seeking to admit L.C.'s out-of-court statements regarding the sexual abuse under section 8-2601 of the Code of Civil Procedure (Code) (735 ILCS 5/8-2601 (West 2016)), which permits the admission of hearsay statements of sexual abuse reported by a minor under the age of 13 when the minor is unavailable to testify and the statements are reliable and supported by corroborating evidence. Augustin moved to continue the hearing so that he could obtain L.C.'s medical records, which he claimed would show a recantation of her claim that he abused her. Alternatively, asserting lack of proper notice, Augustin requested that the hearsay statements be barred. The motion for a continuance was denied, and the court took Trinidad's motion *in limine* with the hearing on the order of protection.

¶ 15     During the hearing, Perez-Almuhtaseb testified regarding the three interviews she conducted on April 29, 2016. With respect to L.C., Perez-Almuhtaseb was permitted, over

objection, to state her belief that L.C. was truthful and that, during the interview, L.C. appeared afraid to talk.

¶ 16    Trinidad recounted the events of April 29 and testified that later that evening, after L.C. fell asleep, L.C. woke up very scared and began to cry "Augustin." Since the incident, Trinidad noticed that L.C. had become very aggressive. Several months later on August 16, 2016, Trinidad was present when L.C. indicated that she wanted to draw, but did not know what to draw, so L.C. started drawing and drew a picture that looked like a penis. A copy of the picture was introduced into evidence.

¶ 17    Salcedo, who also testified, indicated that she had seen L.C. five days a week for 2.5 hours each day for the past two years and had a good understanding of L.C.'s typical behavior in the classroom. Salcedo described L.C. as having been very happy, outgoing, helpful with the other children and just happy to be in school. After the incident, Salcedo noticed a change in L.C. because she became more easily angered and started identifying things in story books that she did not identify before that were connected to an increased knowledge of sexual behavior.

¶ 18    After hearing the testimony relating to the sexual abuse allegations and viewing the VSI, which the trial court found Stevenson conducted in a neutral manner, the trial court admitted L.C.'s out-of-court statements, finding L.C. to be unavailable to testify and that her outcry statements were reliable and corroborated by other evidence. Based on the preponderance of evidence, including L.C.'s outcry of sexual abuse, the trial court found that the alleged sexual abuse occurred and issued a plenary order of protection for one year effective from January 17, 2017, to January 17, 2018. Augustin filed a motion for a new trial and to reconsider, which the trial court denied.

¶ 19    ANALYSIS

¶ 20    Augustin asserts that L.C.'s out-of-court statements of sexual abuse were inadmissible hearsay. Specifically, Augustin claims that the trial court erred in finding L.C. unavailable to testify and that her statements were both reliable and supported by independent corroborating evidence. Augustin contends that the order of protection must be vacated because its issuance was improperly based on inadmissible hearsay statements.

¶ 21    Section 205(a) of the Illinois Domestic Violence Act of 1986 (Act) (750 ILCS 60/205(a) (West 2016)) governs any proceeding to obtain, modify, reopen, or appeal an order of protection. Such proceedings, including the admission of evidence of statements by victims of abuse, are conducted under the Code. *In re Marriage of Flannery*, 328 Ill. App. 3d 602, 606 (2002). Specifically, under section 8-2601 of the Code, the following two requirements must be satisfied to admit an out-of-court statement made by a child under the age of 13 involving an unlawful sexual act: (1) the court conducts a hearing outside the jury's presence and finds that the time, content, and circumstances of the statement provide sufficient safeguards of reliability and (2) the child either (a) testifies at the proceeding or (b) is unavailable as a witness and there is corroborative evidence of the act that is the subject of the hearsay statement. 735 ILCS 5/8-2601(a) (West 2016); *Countryman v. Racy*, 2017 IL App (3d) 160379, ¶ 10. We review the trial court's rulings regarding the admissibility of evidence for an abuse of discretion. *People v. Chambers*, 2016 IL 117911, ¶ 75. A trial court abuses its discretion when its decision is arbitrary, fanciful, or unreasonable or where no

reasonable person would take the view adopted by the trial court. *Seymour v. Collins*, 2015 IL 118432, ¶ 41.

¶ 22 Augustin first claims that the trial court erred in finding L.C. unavailable to testify based on her age and fear. But contrary to Augustin's position, fear and youth are relevant factors to consider in determining whether a child witness is unavailable to testify regarding sexual abuse allegations even under the more strict criminal proceedings standards. *People v. Stechly*, 225 Ill. 2d 246, 315 (2007).

¶ 23 Augustin relies heavily on *People v. Johnson*, 118 Ill. 2d 501 (1987), but such reliance is misplaced. In *Johnson*, the court held that a five-year-old's reluctance to testify did not render the child witness unavailable under Illinois Supreme Court Rule 414 (eff. Oct. 1, 1971). *Johnson*, 118 Ill. 2d at 510. After *Johnson*, the Illinois Supreme Court decided *Stechly*, 225 Ill. 2d 246, 312 (2007), which addressed whether a child victim was unavailable for purposes of the statutory hearsay exception for sexual abuse victims under the age of 13 set forth in section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 1998)). In *Stechly*, the Illinois Supreme Court found *Johnson* distinguishable because *Johnson* involved Rule 414, which is a general rule applicable to all criminal cases. *Stechly*, 225 Ill. 2d at 313. In contrast, section 115-10 deals specifically with evidence in criminal proceedings regarding the sexual assault of children. *Id.* The *Stechly* court went on to find that notwithstanding the court's holding in *Johnson* (that unwillingness to testify cannot constitute unavailability under Rule 414), under section 115-10, unavailability includes minor witnesses who are unable to testify because of fear. *Id.* at 315. *Stechly* also noted that after and presumably in response to *Johnson*, the legislature amended section 115-10 to permit the introduction of a child's out-of-court statement when the child is unavailable. *Id.* at 314.

¶ 24 Section 8-2601 of the Code is the civil counterpart to section 115-10 of the Code of Criminal Procedure of 1963. *In re Marriage of Flannery*, 328 Ill. App. 3d at 609; *In re Marriage of Rudd*, 293 Ill. App. 3d 367, 373 (1997). Indeed, section 115-10 and section 8-2601 contain essentially identical language and permit admission of a child's hearsay statements detailing instances of sexual abuse. *Rudd*, 293 Ill. App. 3d at 373. Consequently, contrary to Augustin's position, *Johnson* and Illinois Supreme Court Rule 414 are inapplicable.

¶ 25 The *Stechly* court also found *Johnson* distinguishable because no expert testimony or evidence regarding the child's unavailability was offered in that case. *Stechly*, 225 Ill. 2d at 315. Here, as in *Stechly*, there was sufficient evidence supporting a finding of unavailability. *Id.* Specifically, L.C.'s teacher of two years noted mood changes that she noticed in L.C.'s behavior after the incident, as well as an advanced sexual knowledge. L.C.'s mother also observed a negative change in L.C.'s behavior after the incident, noting she had become very aggressive. Likewise, L.C. expressed fear and anxiety in the VSI about her dad going away if she talks. The existence of the VSI is crucial because L.C.'s demeanor may be easily observed. Particularly relevant is the fact that L.C. looked down and remained still when answering questions about the touching and if Augustin had touched any other part of her body. Also relevant is the fact that when L.C. was asked if she was afraid, she responded "yes." Moreover, L.C.'s mother and the DCFS investigator observed that L.C. was afraid to talk. Indeed, L.C. explained to her mother that Augustin told her that if she said anything, he would leave and she and her siblings would be without a father. The record consistently

demonstrates L.C.'s fear that if she said anything "my daddy will leave the house." Although Augustin had already left the house by the time of the hearing, L.C. stated during the VSI that "he is on vacation," leading to a reasonable presumption that L.C. was still afraid that what she said may cause Augustin to leave for good. Taking into consideration L.C.'s age in conjunction with her demonstrated fear and notable personality changes after the incident, the trial court did not abuse its discretion in finding L.C. unavailable to testify. Importantly, the determination of whether a child under the age of 13 who was a victim of sexual abuse is unavailable to testify is a fact specific inquiry subject to the trial court's exercise of discretion. *In re Brandon P.*, 2014 IL 116653, ¶ 47. Here, the record, and in particular the VSI, amply support the trial court's finding of unavailability. Moreover, the hearing on the order of protection occurred within months of the VSI and nothing in the record suggests that L.C.'s fear as exhibited during the VSI had dissipated such that she could be deemed available to testify at the order of protection hearing.

¶ 26    Augustin next challenges the trial court's finding that L.C.'s statements were corroborated, especially given the absence of any supporting medical testimony. Augustin claims that because the individual factors that the trial court considered could not establish corroboration, consideration of the factors in the aggregate also failed to establish corroboration.

¶ 27    Corroborating evidence of alleged abuse or neglect requires independent evidence that " 'would support a logical and reasonable inference that the act of abuse or neglect described in the hearsay statement occurred.' " *Flannery*, 328 Ill. App. 3d at 610 (quoting *In re A.P.*, 179 Ill. 2d 184, 199 (1997)). Stated differently, corroborating evidence is evidence making " 'it more probable that a minor was abused or neglected.' " *Id.* (quoting *In re A.P.*, 179 Ill. 2d at 199). The form of the corroboration is case specific and may include physical or circumstantial evidence. *Id.*

¶ 28    Here, the trial court found two types of corroborating evidence: (1) physical evidence consisting of redness of L.C.'s vaginal area and (2) testimony relaying the statements L.C. made constituting the act of abuse. Augustin asserts that the appearance of vaginal redness was insufficient corroboration without any supporting medical testimony. But, as the trial court noted, medical testimony is not required to establish corroboration, particularly where other corroborative evidence is included in the record. *In re An. W.*, 2014 IL App (3d) 130526, ¶ 63; *People v. Uselding*, 217 Ill. App. 3d 1063, 1073 (1991). Specifically, the record demonstrates that L.C. consistently identified her vaginal area as the place where Augustin touched her, both in the VSI and to her mother and the DCFS investigator, which was consistent with the location of the redness. There was also testimony from L.C.'s teacher indicating that L.C. had an increased sexual awareness after the incident, which was further evidenced by L.C.'s drawing of a penis. Likewise, both L.C.'s mother and teacher observed a negative change in L.C.'s behavior after the incident. L.C.'s multiple statements detailing the abuse were consistent in all material respects, including where on her body Augustin touched her and that he used his hand in a rubbing motion. Augustin's claim might be persuasive if there had been only one piece of corroborating evidence. But the record amply demonstrates that there was more than a single piece of corroborating evidence, and the record in total provided sufficient evidence to support a logical and reasonable inference that the act of abuse described by L.C. occurred.

¶ 29    Finally, Augustin challenges the trial court's finding that L.C.'s statements were reliable, claiming that when the evidence elicited during the proceedings is considered collectively, insufficient indicia of reliability exists.

¶ 30    The reliability of a statement is determined based on the time, content, and circumstances surrounding the making of the statement and the totality of the circumstances. 735 ILCS 5/8-2601(a) (West 1996); *Stechly*, 225 Ill. 2d at 313. Relevant factors to determine reliability include (1) the spontaneity and consistent repetition of the statement, (2) the child's mental state, (3) the use of terminology unexpected for a child of similar age, and (4) the lack of a motive to fabricate. *Stechly*, 225 Ill. 2d at 313.

¶ 31    Here, the record supports a finding of reliability. Regarding timing, L.C.'s outcry was immediate to her mother and the DCFS investigator the day after the incident and approximately a week later during the VSI. As to content, all of L.C.'s statements were consistent regarding when it occurred, that Augustin touched her with his hand, how he moved his hand while touching her, where on her body Augustin touched her, and that Augustin was standing while touching her. Although, as the trial court noted, there were discrepancies in L.C.'s statements such as where the abuse occurred (in her parents' bedroom as opposed to the lower-level "garage") and where her mother was (out doing the laundry as opposed to eating in the house), we would not expect a five-year-old to consistently relate every detail of an incident. In fact, the discrepancies refuted any inference that L.C.'s statements were scripted and not the product of her experience. Moreover, L.C. used language typical of a child of similar age when describing the incident. Consequently, there was ample evidence in the record supporting the trial court's finding of reliability.

¶ 32    Because Trinidad offered evidence satisfying the requirements of section 8-2601, the trial court did not abuse its discretion by admitting into evidence L.C.'s out-of-court statements, having found L.C. unavailable to testify and that her out-of-court statements were reliable and supported by corroborating evidence. Augustin limits his claim on appeal to the admissibility of L.C.'s hearsay statements and does not challenge the issuance of the order of protection on any other grounds. Consequently, we find that because L.C.'s statements were properly admitted into evidence, the trial court properly issued the plenary order of protection for the benefit of Trinidad and her three minor children.

¶ 33    Affirmed.