17 October 2000

 No. 3--00-0055

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 2000 

DARIA W., Individually ) Appeal from the Circuit Court

and as Mother of D.W., ) of the 14th Judicial Circuit,

 ) Rock Island County, Illinois,

Petitioner-Appellee, ) 

 )

v. ) No. 98--OP--555

 ) 

BRADLEY W., ) Honorable

                                ) Lori Lefstein,

Respondent-Appellant. ) Judge, Presiding.

_________________________________________________________________

PRESIDING JUSTICE SLATER delivered the opinion of the court:

_________________________________________________________________

The petitioner, Daria W., filed a petition for order of protection on behalf of her minor child, D.W., against the respondent, Bradley W., the father of the child.  The trial court entered a plenary order of protection.  On appeal, Bradley argues that the trial court erred in applying section 606(e) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/606(e) (West 1998)) to admit D.W.'s hearsay statements.  He also claims that the court's decision to enter the order of protection was against the manifest weight of the evidence.  We affirm. 

On October 30, 1998, Daria filed a verified petition for order of protection against Bradley requesting that his unsupervised overnight visitations be terminated.  In her petition, she claimed that Bradley sexually abused their nine-

year-old daughter, D.W.  Daria's petition alleged that Bradley "tickled" D.W.'s vagina during an overnight stay.       

At the hearing, Doctor Linda Ozaki testified that she specialized in pediatric medicine and had experience with cases of sexual assault and child molestation.  On November 3, 1998, she performed a genital exam of D.W.  Dr. Ozaki found that a portion of D.W.'s hymen was missing.  She also noticed a notch, a bump, and a healed scar.  Dr. Ozaki opined that the injuries to the hymen were consistent with sexual abuse.  She did not believe that the injuries were the result of penile penetration because the damage would have been more severe.  The trauma to the hymen was consistent with the type of injury that would occur from the insertion of a finger or other small object into the vagina.  Dr. Ozaki acknowledged the abuse could have occurred two to three weeks, or two to three years, prior to her examination.  She was unable to pinpoint the exact date because injuries to that area of the body heal quickly.

Crystal Holtrop, a marriage and family therapist, testified that she first met with Daria on October 14, 1998, to discuss a statement made by D.W.  She interviewed D.W. in the presence of her mother on October 22.  During the interview, Holtrop gave D.W. anatomically correct dolls and asked if anything happened to D.W. to make her feel uncomfortable.  Using the dolls, D.W. indicated that once, when she was asleep at her father's house, her father came into her room, pulled down her underpants, and tickled her "poo."  Holtrop stated that D.W. took her finger and put it near the female doll's underpants.  D.W. told Holtrop that her father's hands must have been dirty because after the encounter he went to the bathroom and washed them.  

Holtrop met with D.W. on several other occasions.  During a meeting on November 18, D.W. told Holtrop that her dad came into her room while she was sleeping and tickled her "poo."  When Holtrop asked D.W. to show her how he tickled her, D.W. stuck her finger inside the girl doll's vagina.  D.W. reiterated that her father must have had dirty hands because he went to the bathroom and washed them.

Tammy Long, Daria's sister, testified that on the morning of November 19, 1998, she was driving D.W. to the courthouse.  When D.W. got into the car, she began crying and told Tammy that her dad just kissed her "poo" and she did not want to tell the story in front of him.  

Daria testified that she became concerned about D.W.'s sexual tendencies in the summer of 1998.  In July of that year, Daria's mother, Joyce, walked into her bedroom and found D.W. with two of her friends.  One of the other girls had her underpants off.  When Joyce told Daria about the incident, Daria scolded D.W.  She told her daughter that young girls do not behave that way and D.W. could get in trouble with the law.  She then asked D.W. if anyone ever touched her "poo."  D.W. responded, "No."  Daria did not believe her answer and warned her to tell the truth.  D.W. said, "Okay, okay, okay.  You promise you won't get mad?"  She then told Daria that her daddy tickled her "poo."  Daria asked her when it occurred.  D.W. replied that she was little and that it happened the last time she spent the night at her father's.   

Daria stated that she discussed the matter with her mother.  They thought that D.W. might be mad at Bradley because he did not visit her.  Daria and Joyce decided to refrain from immediate action.  In September, Daria brought the subject up again.  She asked D.W. if she was telling her the truth about the incident with her father.  D.W. refused to talk about it.  Daria left the matter alone until October 5, 1998.  That morning, D.W. starting asking Daria questions about Bradley and Daria's relationship.  Daria asked D.W. if Bradley really tickled her "poo" and D.W. said, "Yes."  D.W. stated that Bradley did other things as well but refused to elaborate.

On cross-examination, Daria testified that she talked to D.W. about inappropriate touching beginning in 1994.  She read books to D.W. on the subject.  Daria told D.W. numerous times that it was inappropriate for anyone to touch her private parts and D.W. should tell her if someone did.

Toni W., Bradley's wife, testified that D.W. did not like to sleep in her room when she spent the night.  Toni stated that during the last overnight visitation, D.W. got very upset when it was time to go to bed.  She started crying hysterically and saying that her mom never made her sleep alone.  She told Bradley she wanted to go home.  They called Daria's house but Daria was not home.  Brad and Toni sat with D.W. in her room while she cried herself to sleep.

Toni stated that Bradley limited his visitation with D.W. because he felt that D.W. was tormented and pressured by Daria after D.W. spent time with him.  Toni stated that during the last visitation in April of 1998, D.W. told Bradley and Toni that she french kissed a boy.  Toni asked her what a french kiss was, and she explained that she kissed him with her mouth open and her tongue in his mouth.

Bradley testified that during the divorce proceedings, Daria threatened to accuse him of child molestation.  Bradley stated that he reduced visitation beginning in 1995 to protect D.W. from her mother's harassment.  Bradley denied sexually abusing his daughter.  

On cross-examination Bradley conceded that during his deposition the only reason he gave for the decrease in visitation was his busy work schedule.  Bradley also testified that he was not aware of any statements made by Daria that Bradley sexually molested their daughter.   

Harrison Smith, a child protection investigator with the Department of Children and Family Services, testified that he interviewed D.W.  Smith stated D.W. initially said she wanted to forget about the incident but then spontaneously started telling him what happened.  According to Smith's report, D.W. stated that she was asleep at her father's house.  She felt someone tickling her "poo."  She woke up and no one was there.  She went to the bathroom and her father was washing his hands.  She told Smith that her "poo" was between her legs.

The trial court appointed child therapist Bernadine Frus to conduct an independent evaluation of D.W.  During the first interview, D.W. picked up an anatomically correct female doll and said that her father tickled her "poo."  When Frus asked her to demonstrate, D.W. inserted her finger into the vagina of the doll.  Frus testified that D.W. looked very sad while she was relating the story.  D.W. told Frus that she was sleeping and her father came into her room, pulled down her pants, and tickled her "poo."  According to D.W., her father then went to the bathroom and washed his hands.  Frus testified that throughout the sessions D.W. consistently named her father as the perpetrator.   

At the close of evidence, Bradley moved to dismiss.  He argued that there had been no determination that the child was unavailable to testify.  Thus, he claimed that under section 8--

2601 of the Code of Civil Procedure (Code) (735 ILCS 5/8--2601 (West 1998)) D.W.'s hearsay statements were inadmissable.  The trial court noted that the petition concerned Bradley's visitation and the allegations of abuse involved Bradley and his daughter.  Therefore, the court concluded that the case fell under the purview of section 606(e) of the Marriage Act, not section 8--2601.  The trial court acknowledged that the hearsay statements alone would not support a finding of abuse.  However, it found that a determination that the child was unavailable was not required and denied the motion.   

The trial court found D.W.'s hearsay statements reliable.  It considered Daria a credible witness.  However, it questioned the veracity of Bradley's testimony.  The court concluded that D.W.'s statements, in conjunction with Dr. Ozaki's testimony that D.W. was sexually abused, proved Daria's case by a preponderance of the evidence.  Consequently, it entered a two-year plenary order of protection against Bradley. 

DISCUSSION

On appeal, Bradley first argues that the trial court erred in applying section 606(e) of the Marriage Act to admit D.W.'s hearsay statements alleging sexual abuse.  Instead, he claims that the court should have utilized section 8--2601 of the Code.  That section requires a hearing to establish the statements' reliability and a determination that the witness is unavailable if the child does not testify.

Pursuant to the Illinois Domestic Violence Act (Domestic Violence Act) (750 ILCS 60/101 
et
 
seq
. (West 1998)), an order of protection shall issue if the court finds that the petitioner has been abused by a family member.  750 ILCS 60/214(a) (West 1998).  As a remedy, the court may restrict or deny the respondent's visitation with a child if the court finds the respondent abused the child during visitation.  750 ILCS 60/214(b)(7) (West 1998).

Section 606(e) of the Marriage Act states: 

"Previous statements made by the child relating to any allegations that the child is an abused or neglected child *** shall be admissible in evidence in a hearing concerning custody of or visitation with the child.  No such statement, however, if uncorroborated and not subject to cross-examination, shall be sufficient in itself to support a finding of abuse or neglect."  750 ILCS 5/606(e) (West 1998).  

By contrast, a statement of sexual abuse made by a child under the age of 13 is admissible under section 8--2601 of the Code only after:

 "(1) the court conducts a hearing outside the presence of the jury and finds that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and (2) the child either: (i) testifies at the proceeding; or (ii) is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement."  735 ILCS 5/8--2601(a) (West 1998).

It is a basic rule of statutory construction that when two statutory provisions deal with the same legal issue, the more specific statute governs. 
 
Hernon v. E.W. Corrigan Construction Co.
, 149 Ill. 2d 190, 595 N.E.2d 561 (1992).  The admission of evidence lies within the discretion the trial court, and its decision will not be reversed on appeal absent a clear abuse of discretion.  
Holder v. Caselton
, 275 Ill. App. 3d 950, 657 N.E.2d 680 (1995).  

Bradley claims that section 8--2601 of the Code controls the admissibility of the hearsay testimony in the case at bar.  He offers no case law or statutory authority in support of this position.  

We find that section 606(e) is the more specific statute regarding the admission of out-of-court statements in which a child alleges sexual abuse by a parent.  Both section 606(e) and section 8--2601 concern the admission of hearsay statements by abused children in civil proceedings.  However, section 606(e)  addresses the admission of those statements when the alleged abuser is the parent.  Moreover, section 606(e) specifically mentions that it applies to hearings concerning visitation with the child.  Consequently, the trial court properly admitted D.W.'s statements pursuant to section 606(e) of the Marriage Act.   In reaching its decision in the case at bar, the trial court relied on in 
In re Marriage of Rudd
, 293 Ill. App. 3d 367, 688 N.E.2d 342 (1997).  There, the mother requested that the court restrict the father's visitation in light of the father's alleged sexual abuse of his niece.  At the hearing, the trial court found that statements made by the father's daughter were admissible under section 606(e) of the Marriage Act.  The appellate court concluded that it was not an abuse of discretion to admit the statements made by the daughter pursuant to that section.  
Rudd
, 293 Ill. App. 3d 367, 688 N.E.2d 342.  Comparing the statements admitted in 
Rudd
 to the hearsay statements in this case, we find no error in the trial court's 
decision to admit D.W.'s statements pursuant to section 606(e).

Next, Bradley argues that the trial court's decision to enter a plenary order of protection was against the manifest weight of the evidence.  

Preliminarily, we note that Bradley claims the standard of review is whether the trial court's decision is against the manifest weight of the evidence.  The proper standard of review is whether the court's decision is an abuse of discretion.  See 
People ex rel. Minteer v. Kozin
, 297 Ill. App. 3d 1038, 697 N.E.2d 891 (1998); 
Whitten v. Whitten
, 292 Ill. App. 3d 780, 686 N.E.2d 19 (1997).  Thus, we must determine whether the trial court abused its discretion in entering an order of protection against Bradley. 

The trial court is in the best position to evaluate the credibility of the witnesses.  
Kozin
, 297 Ill. App. 3d 1038, 697 N.E.2d 891.  It has broad discretion to decide whether abuse, as defined in the Domestic Violence Act, occurred.  
In re Marriage of Lichtenstein
, 263 Ill. App. 3d 266, 637 N.E.2d 1258 (1994).

Here, the trial court heard testimony from several witnesses regarding statements made by D.W.  These witnesses testified that D.W. told them her father tickled her "poo."  Although details of the occurrence varied, her rendition of the specific act of abuse was consistent.  In all the conversations, D.W. named only her father as the abuser.

Nevertheless, Bradley insists that there was insufficient corroboration of D.W.'s hearsay statements alleging sexual abuse.  Specifically, he claims that the medical examiner's testimony does not support the court's finding of abuse.

Although Dr. Ozaki could not identify the perpetrator, independent corroboration of the identity of the abuser, in addition to the child's hearsay statement, is not required.  See 
In re A.P.
, 179 Ill. 2d 184, 688 N.E.2d 642 (1997)
.  Dr. Ozaki's examination of D.W. revealed evidence that supported D.W.'s claim that she was sexually abused.  Dr. Ozaki opined that the vagina had been penetrated with a finger or other small object.  She determined that the injury was not the result of penile penetration.  The results of her examination were consistent with D.W.'s re-enactments of abuse and added strength to her statements.  Accordingly, we find that the hearsay statements were sufficiently corroborated by Dr. Ozaki's testimony. 

After considering all the evidence, the court determined that D.W.'s statements were reliable based on corroborating evidence and the testimony of several credible witnesses.  We are in no position to second-guess the trial court's conclusions on issues of credibility.  Accordingly, we must conclude that the court's decision to enter an order of protection against Bradley was not an abuse of discretion.         

For the foregoing reasons, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

BRESLIN and HOLDRIDGE, J.J., concur.