# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Portillo*, 2021 IL App (3d) 200221

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF JULIE PORTILLO, Petitioner-Appellee, and DANIEL JOSUE PORTILLO MARTINEZ, Respondent-Appellant. |
| District & No. | Third District<br>No. 3-20-0221 |
| Filed | September 23, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Bureau County, No. 18-D-71; the Hon. Cornelius J. Hollerich, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | James R. Angel, of Princeton, for appellant.<br><br>Morgan K. Strow, of Strow Law LLC, of Ottawa, for appellee. |
| Panel | PRESIDING JUSTICE McDADE delivered the judgment of the court, with opinion.<br>Justices O'Brien and Schmidt concurred in the judgment and opinion. |

**OPINION**

¶ 1    Julie Portillo filed a petition for an order of protection and a separate emergency petition for supervised parenting time against her former husband, Daniel, on behalf of herself and the parties' two minor children. The Bureau County circuit court granted both petitions, entering an emergency order under the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/603.10(a) (West 2018)) and a plenary order under the Illinois Domestic Violence Act of 1986 (Domestic Violence Act) (750 ILCS 60/219 (West 2018)). Both orders limited Daniel's contact with the children to supervised two-hour visits on the first and third Saturdays of each month. Daniel appealed the plenary order. We reverse and remand the matter to the circuit court with directions to consider, prior to rehearing, whether the time, content, and circumstances of the children's statements provided sufficient safeguards of reliability and whether the children were unavailable to testify.

¶ 2                                             I. BACKGROUND

¶ 3    On November 2, 2018, the trial court entered a "Judgment for Dissolution of Marriage and Final Allocation Judgment: Allocation of Parental Responsibilities and Parenting Plan" for Julie and Daniel (Parenting Plan). The Parenting Plan designated the parties as joint decision makers for their two minor children, M.J.P. (born October 25, 2014) and M.C.P. (born August 19, 2016). As part of the Parenting Plan, a schedule was created that specified dates and times when each parent was responsible for the care of the minor children. On June 4, 2019 (later amended on September 4, 2019), Daniel filed a petition to modify parenting times and responsibilities with the trial court. Julie responded with a motion to dismiss Daniel's petition on July 15 (later amended on September 5). That matter was set for mediation, but the mediation order was later dismissed.

¶ 4    On October 21, Julie filed a separate verified petition for a plenary order of protection under the Domestic Violence Act. That same day, an emergency order of protection was entered, and a date was scheduled to conduct a hearing on Julie's request that the emergency order be made plenary. On November 4, Julie filed an emergency parental termination petition, captioned "Emergency Petition to Terminate Daniel Portillo's Parenting Time, or in the Alternative, Petition to Modify Judgment for Supervised Parenting Time on Both a Temporary and Permanent Basis." Julie also filed a motion to admit hearsay testimony and notice of intent to offer hearsay evidence, "pursuant to Section 213.1 of the [Domestic Violence Act] and Section 606.5 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act), or in the alternative, Section 2601 of the Code of Civil Procedure" (Code). The parties were also present that day, with counsel, for a hearing before the circuit court. The trial judge continued the cause to December 16 "for [the] motion hearing to coincide with hearing on [the] Order of Protection." The October 21 emergency order of protection was extended until that day.

¶ 5    On December 16 and 17, during the plenary hearing, the trial court heard evidence pertaining to both Julie's plenary order of protection against Daniel and the emergency parental termination petition submitted by Julie to the court on November 4. At that hearing, numerous witnesses (including Julie and Daniel) testified as to several events that had disrupted the successful implementation of the Parenting Plan. These events included numerous altercations and incidents that occurred during child drop-offs and pickups, prompting Daniel to install a camera to record the events. Eventually, the parties started to exchange the children at the

Bureau County Sheriff's Office in an attempt to avoid further incidents. Julie testified that on June 2 the children came back from a visit at Daniel's home with sore bottoms. Two days later, on June 4, Daniel filed a petition to modify parenting time and responsibilities (later amended on September 4), which claimed, *inter alia*, that Julie failed to share extracurricular activity schedules or coach information, unilaterally signed the children up for private school, and took the children to therapy without notifying him or allowing him to participate.

¶ 6     Julie testified that on August 25, 2019, after picking up the children from Daniel's residence, M.J.P. told her that he and his brother can go to Daniel's room but are only allowed to sleep with him one at a time when he gets off his computer. In mid-October, M.J.P. began having nightmares, which lasted for several weeks. On October 17, while changing M.C.P.'s diaper, Julie discovered the tip of his penis was unusually red, as well as the area surrounding his rectum. M.C.P. complained of pain as Julie changed his diaper. When Julie asked M.C.P. what happened to cause the redness, M.C.P. told her that "daddy did it." Julie then asked M.C.P., "Did daddy touch your pee-pee and hurt you?" M.C.P. responded, "Yes."

¶ 7     Additional evidence was presented during the plenary hearing regarding Daniel's history of inappropriate sexual behavior, including, *inter alia*, (1) that in August 2016, a teenage babysitter for Julie and Daniel's children reported to her parents that Daniel had spanked her; (2) that as a teenage orphan in Guatemala, Daniel engaged in inappropriate contact with a female child at the orphanage; (3) that Daniel admitted to watching pornography; (4) that Daniel had sexually assaulted Julie's sister, Tricia; (5) that Daniel was fired from the post office after making unwanted trips to the home of a woman he met on his mail route; and (6) that Daniel had sexually assaulted Julie.

¶ 8     The cause was continued for a further plenary hearing on January 31, 2020. At that hearing, the trial judge specifically weighed the credibility of the witnesses, discussed the weight of the evidence, and asserted that, as it pertains to his decision in this case, all evidence was viewed in the aggregate. Pertaining to witness credibility, the judge found, *inter alia*, that (1) Julie "was a credible witness in terms of what she testified to"; (2) numerous aspects of Daniel's testimony "didn't seem logical"; (3) Julie's mom, Cindy, was generally believable; and (4) Julie's sister, Tricia, "seemed to be a credible person."

¶ 9     At the conclusion of that hearing, the trial judge announced that the following two orders would be entered: (1) an order granting Julie's plenary order of protection protecting Julie and the parties' two minor children, M.J.P. and M.C.P., from Daniel and (2) an order granting Julie's emergency parental termination petition. On February 7, 2020, the trial court entered two separate written orders granting specific remedies as a result of Julie's two separate petitions. On March 9, 2020, Daniel filed a motion to reconsider, which challenged only the plenary order of protection against him and was denied by the trial court on June 5, 2020. Daniel then filed a timely notice of appeal, which, again, references only the plenary order of protection against him.

¶ 10                                    II. ANALYSIS

¶ 11    Daniel argues that the circuit court erred by granting Julie's plenary order of protection and emergency petition for supervised parenting time. Specifically, Daniel asserts the following: (1) that this court has jurisdiction to review the circuit court's order granting Julie's emergency petition for supervised parenting time, (2) that the trial court applied the wrong legal standard to determine whether the children's hearsay statements were admissible at the plenary hearing,

- 3 -

(3) that Daniel properly preserved review of the children's hearsay statements, and (4) that there was insufficient evidence to support the trial court's orders granting Julie's plenary order of protection and emergency petition for supervised parenting time.

¶ 12                                    A. Jurisdiction

¶ 13     In his brief to the court, Daniel argues that there was insufficient evidence to justify the trial court's orders restricting his parenting time under *both* the plenary order of protection, addressed under the Domestic Violence Act, and the emergency parental termination petition, addressed under the Marriage Act. He has, however, specifically appealed only one of the two orders he attacks in his argument, giving rise to a question about the extent of our jurisdiction.

¶ 14     On February 7, 2020, the trial court entered two separate orders granting specific remedies as a result of Julie's two separate petitions under the two different acts. Both orders required supervised parenting time, but the plenary order of protection granted relief beyond that of the emergency parental termination petition. Each ruling was distinct, separate, and appealable in its own right.

¶ 15     On March 9, 2020, Daniel filed a motion to reconsider referencing *only* the plenary order of protection against him, which was denied by the trial court on June 5, 2020. Daniel then filed a timely notice of appeal, which, again, referred *only* to the plenary order of protection against him. Consequently, Julie, in her response brief, challenges this court's jurisdiction to consider the trial court's decision on the emergency parental termination petition.

¶ 16     Matters of jurisdiction present questions of law and are reviewed *de novo*. *Gardner v. Mullins*, 234 Ill. 2d 503, 508 (2009). Our supreme court has held "that a notice of appeal is to be liberally construed." *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 433 (1979). "Unless the appellee is prejudiced thereby, the absence of strict technical compliance with the form of the notice is not fatal, and where the deficiency in the notice is one of form only, and not of substance, the appellate court is not deprived of jurisdiction." *Id.* at 434.

¶ 17     In this case, when Daniel filed his March 9, 2020, motion to reconsider, he only asked the trial court to reconsider its February 7, 2020, plenary order of protection against him. At no point did Daniel amend his March 9, 2020, motion to reconsider to include Julie's emergency parental termination petition, and the trial court's final judgment only states that the "motion to reconsider is denied" and that it is final and appealable. Daniel subsequently filed a notice of appeal on June 19, 2020. Under the "relief requested" section of Daniel's notice of appeal, he asked this court to reverse the circuit court's February 7, 2020, order granting Julie's requested plenary order of protection for herself and her children, "particularly those provisions restricting his parenting time with his minor children." However, in Daniel's brief to the court, he asserts that, because the plenary order of protection and the emergency parental termination petition provided him with the exact same outcome—a supervised parenting schedule—consideration of only the plenary order of protection would render any ruling made on appeal advisory. This is not so. A violation of the plenary order of protection has greater consequences than a violation of the emergency parental termination petition because it may trigger fines and jail time. Based on Daniel's motion to reconsider and his subsequent notice of appeal, both of which fail to reference the trial court's February 7, 2020, order granting Julie's emergency parental termination petition, the only issue before this court is the plenary order of protection against Daniel. We lack jurisdiction to review Julie's emergency parental termination petition.

¶ 18    In light of the above, this court lacks jurisdiction over the February 7, 2020, emergency parental termination petition, and the supervised visits specified in the emergency parental termination petition stand as the unchallenged ruling of the trial court.

¶ 19                    B. Standard to Admit Children's Hearsay Statements

¶ 20    As the parties note, the various districts of the Illinois Appellate Court disagree as to the statute that should control the admissibility of a child's out-of-court statements concerning abuse in order of protection cases when the alleged abuser is a parent. "The two possible statutes are section 606.5(c) of the [Marriage] Act (750 ILCS 5/606.5(c) (West 2018) (formerly section 606(e) of the [Marriage] Act)) and section 8-2601 of the Code (735 ILCS 5/8-2601 (West 2018))." *Arika M. v. Christopher M.*, 2019 IL App (4th) 190125, ¶ 15. The Marriage Act does not require a separate hearing regarding the admissibility of a child's proposed hearsay statements. In contrast, a separate admissibility hearing *is* envisioned under section 8-2601 of the Code. Specifically, section 8-2601 (735 ILCS 5/8-2601(a) (West 2018)), located in article VIII of the Code (735 ILCS 5/art. VIII (West 2018)), states the following:

> "(a) An out-of-court statement made by a child under the age of 13 describing any act of child abuse or any conduct involving an unlawful sexual act performed in the presence of, with, by, or on the declarant child, or testimony by such of an out-of-court statement made by such child that he or she complained of such acts to another, is admissible in any civil proceeding, if: (1) the court conducts a hearing outside the presence of the jury and finds that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and (2) the child either: (i) testifies at the proceeding; or (ii) is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement."

¶ 21    At the December 16, 2019, plenary hearing, the trial judge discussed Julie's motion to admit hearsay testimony of the minor children as well as Julie's notice of intent to offer hearsay evidence of the minor children, which requested, *inter alia*, that the judge allow the hearsay testimony of the minor children in accordance with section 606.5 of the Marriage Act (750 ILCS 5/606.5 (West 2018)). In opposition to Julie's hearsay motions, Daniel's counsel argued that section 8-2601 of the Code should govern the admission of the children's hearsay statements.

¶ 22    Relying on a previous decision of this court, the trial judge applied the Marriage Act to govern the admission of the children's hearsay statements for the plenary order of protection and the emergency parental termination petition. In *Daria W. v. Bradley W.*, 317 Ill. App. 3d 194 (2000), this court determined that the Marriage Act should govern the admission of a child's hearsay statements regarding abuse by a parent because that statute specifically addresses and allows admission of these statements where they concern parental custody and visitation rights. See 750 ILCS 5/606(e) (West 2014) (now codified as 750 ILCS 5/606.5(c) (West 2016)); see *Daria W.*, 317 Ill. at 199-200 (explaining "that section 606(e) [of the Marriage Act] is the more specific statute regarding the admission of out-of-court statements in which a child alleges sexual abuse by a parent"). Daniel asks us in this appeal to revisit that decision in light of the more recent decision of *Arika M.*, 2019 IL App (4th) 190125.

¶ 23    This court reviews *de novo* a question of which statute applies. *Bouton v. Bailie*, 2014 IL App (3d) 130406, ¶ 7. "In construing a statute, this court's primary objective is to ascertain and give effect to the legislature's intent, and all other rules of construction are subordinate."

*Arika M.*, 2019 IL App (4th) 190125, ¶ 16 (citing *Barragan v. Casco Design Corp.*, 216 Ill. 2d 435, 441 (2005)). "Courts 'determine intent by reading the statute as a whole and considering all relevant parts.' " *Id.* (quoting *Barragan*, 216 Ill. 2d at 441). "When the statute's language is unambiguous, this court enforces the law as enacted by the legislature." *Id.* " 'Where two statutes are allegedly in conflict, a court has a duty to interpret the statutes in a manner that avoids an inconsistency and gives effect to both statutes, where such an interpretation is reasonably possible.' " *Id.* (quoting *Barragan*, 216 Ill. 2d at 441-42).

¶ 24        In *Arika M.*, a mother sought an order of protection on behalf of herself and her three daughters against the father of her children. *Id.* ¶ 1. In the petition for the order of protection, the mother asserted that the children had confessed that their father touched them inappropriately in their privates and took baths with them. *Id.* ¶ 5. The circuit court commenced a hearing on the mother's request for a plenary order of protection wherein the father's counsel argued that the children's out-of-court statements should not be admissible because they lacked corroboration. *Id.* ¶¶ 7-8. "The court admitted the statements, agreeing with petitioner's counsel [that] the girls' actions and demeanors corroborated their out-of-court statements." *Id.* ¶ 9. The trial court granted the order of protection and reduced the father's parenting time to supervised visits during specified times and phone calls. *Id.* ¶ 10. The father appealed, claiming, *inter alia*, that the children's hearsay statements should not have been admitted. *Id.* ¶ 11.

¶ 25        On appeal, the Fourth District held that section 8-2601 of the Code is the more applicable statute in matters involving a child's out-of-court statements against a parent in an order of protection case. Notably, " 'section 214(b) of the Domestic Violence Act (750 ILCS 60/214(b) (West 2000)) contains 18 subsections listing various remedies that a court may grant in issuing an order of protection.' " *Id.* ¶ 21 (quoting *In re Marriage of Flannery*, 328 Ill. App. 3d 602, 606 (2002)). " 'Seven of those subsections refer to the [Marriage] Act in some capacity. See 750 ILCS 60/214(b)(2), (b)(6), (b)(7), (b)(10), (b) (11), (b)(12), (b)(13) (West 2000). However, none of those subsections require application of section 606(e) in a case brought under the Domestic Violence Act.' " *Id.* (quoting *Flannery*, 328 Ill. App. 3d at 606).

¶ 26        Rather, the statutory provisions governing orders of protection, which are contained in article II of the Domestic Violence Act (750 ILCS 60/art. II (West 2018)), provide that the rules of civil procedure are to govern admissibility of out-of-court statements related to child abuse. 735 ILCS 5/8-2601, 8-2701 (West 2018); *Arika M.*, 2019 IL App (4th) 190125, ¶ 19. Section 205(a) of the Domestic Violence Act (750 ILCS 60/205(a) (West 2018)) provides the following:

> "Any proceeding to obtain, modify, reopen or appeal an order of protection, whether commenced alone or in conjunction with a civil or criminal proceeding, shall be governed by the rules of civil procedure of this State. The standard of proof in such a proceeding is proof by a preponderance of the evidence, whether the proceeding is heard in criminal or civil court. The [Code (735 ILCS 5/1-101 *et seq.* (West 2018))] and Supreme Court and local court rules applicable to civil proceedings, as now or hereafter amended, shall apply, except as otherwise provided by this law."

The Fourth District remanded the case for a hearing to be held in accord with the provisions of section 8-2601 of the Code. *Arika M.*, 2019 IL App (4th) 190125, ¶ 27. We agree with the Fourth District that the safeguards embodied in section 8-2601 of the Code should apply in domestic violence proceedings.

¶ 27 In this case, as in *Arika M.*, Julie requested a plenary order of protection on behalf of herself and her children against the children's father, Daniel. At the plenary hearing, although Daniel's counsel requested that section 8-2601 of the Code be applied, the trial judge applied the Marriage Act standard in reliance on our decision in *Daria W.* Thus, during the hearing on the plenary order of protection, the judge heard the out-of-court hearsay statements of the minor children as relayed by Julie and other witnesses without first holding a hearing and ascertaining and making a finding (1) that time, content, and circumstances of the children's statements provided sufficient safeguards of reliability and (2) that, although the children were unavailable to testify, corroborating evidence of their statements existed. These protections more particularly are necessary where, as here, the custodial father denies the alleged accusations of abuse by his minor child as reported solely by the custodial mother and other interested parties at an adversarial hearing where parental visitation rights and responsibilities are at issue.

¶ 28 We reverse the judgment of the circuit court and remand this case for proceedings consistent with our decision herein. Because the trial court must now conduct a reliability hearing as a determinant of whether the children's hearsay statements can be admitted, we will not address Daniel's assertions that (1) he properly preserved review of the children's hearsay statements or (2) there was insufficient evidence to support the trial court's order granting Julie's plenary order of protection. We note that, due to the jurisdictional posture of this case, the court's emergency order restricting Daniel's visitation that is unaffected by this appeal remains in place until such time as it is supplanted or superseded by a properly grounded plenary order or is reversed or vacated by the circuit court.

¶ 29                                       III. CONCLUSION

¶ 30 The judgment of the circuit court of Bureau County is reversed, and the matter is remanded for further proceedings consistent with this decision.

¶ 31 Reversed and remanded with directions.