2023 IL App (2d) 230235-U
No. 2-23-0235
Order filed December 12, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* PARENTAGE OF K.K., a minor. | ) | Appeal from the Circuit Court |
| | ) | of De Kalb County. |
| | ) | |
| | ) | No. 10-F-77 |
| | ) | |
| | ) | Honorable |
| | ) | Marcy L. Buick, |
| | ) | Joseph C. Pedersen, |
| (Robert Sean Kidwell, Petitioner-Appellant, | ) | Stephanie P. Klein, |
| v. Brittany R. Bryant, Respondent-Appellee). | ) | Judges, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court erred by failing to hold a hearing pursuant to 750 ILCS 5/603.10(b) before modifying an order restricting petitioner's parenting time. The trial court applied the wrong standard in its findings on petitioner's motion for reconciliation counseling pursuant to 750 ILCS 5/607.6.

¶ 2    Petitioner, Robert Sean Kidwell (Kidwell), appeals from the denial of his motion for reconciliation counseling, contending that the trial court applied the wrong standard in issuing its ruling pursuant to section 607.6(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/607.6(a) (West 2022)). Additionally, Kidwell contends that the trial court failed to conduct a hearing and make requisite findings pursuant to section 603.10(b) of the Act (750 ILCS

5/603.10(b) (West 2022)) in denying his motion for hearing or in the alternative resumption of parenting time.

¶ 3                                          I. BACKGROUND

¶ 4      On August 21, 2015, the trial court entered an agreed judgment for parentage of K.K. (D.O.B. September 17, 2008). Relevant here, the agreed judgment decreed that Kidwell would have visitation with K.K. every other weekend and that "visitation with [K.K.] shall be supervised by his parents."

¶ 5      On August 30, 2018, Kidwell filed a motion for make-up visitation, alleging that respondent, Brittany Bryant (Bryant), denied his past four visitation periods with K.K. In her responsive petition to continue the hearing on Kidwell's motion, Bryant alleged K.K. refused to have visitation time with Kidwell because "she felt unsafe" being with him and "broke down and sobbed regarding the prospect of doing so." Bryant further stated that the De Kalb police recommended K.K. be interviewed by the Children's Advocacy Center at the Family Service Agency of De Kalb County. Following that interview, the Illinois Department of Children and Family Services (DCFS) DCFS instructed Bryant "to not permit [K.K.] to have parenting time with [Kidwell] until its investigation has determined the facts of this case." The trial court issued an order continuing the matter until October 5, 2018.

¶ 6      October 3, 2018, Bryant filed a petition to suspend parenting time, realleging the statements made in her response to Kidwell's motion for make-up visitation. On October 4, 2018, Kidwell filed a motion to enforce visitation and appoint guardian *ad litem* (GAL). Kidwell's motion argued that there was no legal basis to suspend his visitation with K.K. as he had "not received a letter from DCFS indicating that there is any investigation or any concerns, founded or unfounded." He further requested the appointment of a GAL "to investigate [Bryant's] parental alienation and to

investigate if [Bryant] is coaching the minor child and exaggerating her claims." The matter was ultimately continued to December 7, 2018, pending the outcome of a DCFS investigation.

¶ 7     On December 7, 2018, Judge Marcy L. Buick held a hearing on the status of the DCFS investigation. Bryant's counsel informed the trial court that the DCFS investigation found the complaint unfounded. Bryant's counsel requested the appointment of a GAL and further suspension of Kidwell's parenting time "until [the GAL has] had an opportunity to go into this and figure out what is going on in this particular case." Kidwell's counsel agreed to the appointment of a GAL but objected to the continued suspension of his parenting time "saying he can't see his little girl over Christmas because of an unfounded DCFS complaint is absolutely insane." The trial court then found as follows:

"The parties' child is now 10 years old. This is not a little child. What I think would be helpful at this point is if the parties want a [GAL] appointed, I would agree to the appointment of the [GAL] at this point, limited to speaking to the child and ascertaining the child's position or thoughts on parenting time with father.

I do not want the [GAL] to do a full-blown investigation. That's not the purpose of the [GAL] at this point. The purpose would be to talk to the child to give the child a voice. The child can say what her thoughts are on the parenting time."

The trial court ordered the appointment of Julie Swanson Haggard as K.K.'s GAL. It further ordered that Kidwell "shall have no parenting time with [K.K.] between [December 7, 2018] and December 17, 2018; this is over objection of father."

¶ 8     On December 13, 2018, Kidwell filed a motion for reconciliation counseling, alleging that he had "been denied parenting time with his child since July 2018" based on the unfounded allegations made by Bryant. His motion further alleged that he "suspects that coaching and/or

parental alienation may be ongoing based on the onslaught of allegations made against him by [Bryant]." Kidwell requested that the trial court "enter an order for reconciliation counseling between him and his daughter and order that they continue to attend counseling until the counselor discharges them[.]"

¶ 9 On January 25, 2019, an agreed order was entered, modifying the December 7, 2018, order. The GAL's investigation was "no longer limited to interviewing the child regarding parenting time." The GAL was then "granted the ability to request medical, counseling and psychiatric records that she deems necessary in support of the investigation regarding the best interests of the minor child."

¶ 10 On February 1, 2019, the trial court entered an order that read as follows:

"Before [March 18, 2019], [K.K.] shall meet with her counselor at Family Services Agency at least two times, if not more. Then the GAL shall confer with [K.K.'s] FSA counselor and school resource teacher before [March 18, 2019]."

¶ 11 On March 18, 2019, the trial court entered an order that read as follows:

"The child shall meet with Daniel Klein at the Family Service Agency without [Kidwell] present, and with such other persons that Klein deems appropriate, to provide his report and recommendation [regarding] reunification counseling. Klein may meet with [Kidwell] if he deems it necessary."

¶ 12 On March 27, 2019, Kidwell filed a motion to clarify the March 18, 2019, order. His motion stated that the GAL "recommended reconciliation counseling between [Kidwell] and the minor child" on the record at the March 18, 2019, hearing.[1] Kidwell's motion further stated that Family

---

[1]This court was not provided a report of proceedings for March 18, 2019.

Service Agency and Daniel Klein seemed resistant to facilitating reconciliation counseling. He suggested that a different facility would better serve the parties.

¶ 13    On March 29, 2019, the trial court entered an order vacating the March 18, 2019, order. In its stead, the trial court ordered that "the parties may use and work with the FSA of De Kalb County for reunification counseling involving father and child."

¶ 14    On April 12, 2019, the trial court entered an order continuing the matter for status on "reunification counseling."

¶ 15    On May 3, 2019, the trial court entered an order continuing the matter for status on "reunification counseling."

¶ 16    On June 24, 2019, the trial court entered an order continuing the matter for status on "counseling."

¶ 17    On July 29, 2019, the trial court entered an order continuing the matter for status on "counseling."

¶ 18    On August 20, 2019, the trial court entered an order continuing the matter for status on "obtaining reconciliation counseling."

¶ 19    On September 23, 2019, the trial court entered an order continuing the matter for status on "identifying a reunification counselor."

¶ 20    On October 18, 2019, the trial court entered an order stating "Jayne Braden of Braden Counseling in Sycamore, Illinois is appointed as reconciliation counselor for the purposes of reunification counseling. Both parties shall fully cooperate with the suggestions and recommendations of the counselor."

¶ 21    On December 6, 2019, the trial court entered an order continuing the matter for status on "counseling."

¶ 22    On February 24, 2020, following a hearing,[2] the trial court entered an agreed order reading as follows:

> "1) Reconciliation counseling is temporarily placed on hold for up to one year, pursuant to the following conditions: A) the child completing weekly counseling with a counselor ***; B) [Jayne] Braden shall receive an update on the reconciliation counseling by the tenth of each month; and C) when the child is no longer in counseling ***, or if [Jayne] Braden does not receive a report by the tenth of any month, [Jayne] Braden may revisit reconciliation, which shall be revisited in any event, not later than 2-24-21."

¶ 23    On May 20, 2020, Bryant filed a petition to modify the February 24, 2020, agreed order. Bryant requested that instead of providing Braden with monthly reports regarding K.K.'s counseling, Bryant would report to the court only when K.K.'s counseling ceased in February 2021. Kidwell filed a response on June 11, 2020, alleging that Bryant's "absolute animus towards [Kidwell] and the fact that [Kidwell] has not seen his daughter for almost two years for no reason, allowing the case to be forgotten with no accountability or pressure for the minor child to actually make progress on her counseling would do a grave disservice to the child and [Kidwell]." He requested that the trial court continue the monthly reports that K.K. continued to attend and receive counseling as ordered. On July 17, 2020, the trial court denied Bryant's petition to modify the February 24, 2020, order.

¶ 24    On August 6, 2020, Kidwell filed a motion for hearing or in the alternative resumption of parenting time. The motion was responsive to Bryant's October 3, 2018, petition to suspend parenting time by citing section 603.10 of the Act and alleged that his parenting time had been suspended since December 7, 2018, without a hearing and over his objection. Further, he alleged

_____

[2]This court was not provided with a report of proceedings from February 24, 2020.

that reconciliation counseling had purportedly been ongoing since February 2019 with no progress toward reunification with K.K.

¶ 25    On October 19, 2020, the parties appeared before Judge Joseph C. Pederson. The hearing addressed when K.K. would be prepared by her counselor, Megan Schultz, for reconciliation counseling. Bryant's counsel told the trial court that Schultz had yet to prepare K.K. for reconciliation counseling because she believed K.K. was "too fragile" and that "if she started talking to [K.K.] about [counseling] now *** it would just start causing sever anxiety[.]" Bryant's counsel further averred that preparing K.K. for reconciliation counseling could have a negative effect on Bryant, who was pregnant at the time of the hearing. Bryant's counsel stated that Schultz was willing to get K.K. prepared for reconciliation counseling, but "she would start it not now, but sometime maybe in January, so that when February 24th rolls around, we'll have an order that says at that time Dr. Braden will start the reunification process." Kidwell's counsel argued that K.K. had been seeing Schultz for eight months and no progress toward reunification counseling had been made. Kidwell's counsel then asked the court to hold a hearing on motion for hearing or in the alternative resumption of parenting time due to her belief that Bryant was not cooperating with the February 24, 2020, agreed order insofar as preparing K.K. for reconciliation counseling with Kidwell. The trial court responded that Kidwell "waived the right to the hearing when [he] agreed to the [February 24, 2020] order that restricted the parenting time." After arguing that section 603.10 of the Act entitled Kidwell to a hearing regarding the suspension of his parenting time, the trial court and Kidwell's counsel engaged in the following exchange:

"THE COURT: [T]here was an order entered, and then you agreed in February to an order that further restricted his parenting time, and so I'm not sure what you would have

a hearing on. I mean, you've already agreed to the reunification counseling, so I'm not sure what we would be having this hearing on.

[KIDWELL'S COUNSEL]: Well, we were anticipating the conciliation counseling. What I'm hearing now is the reconciliation counseling won't be starting until February. [Bryant] isn't going to cooperate[.]

\*\*\*

THE COURT: The order that you previously agreed to this past February agreed that it could not commence until February 24th of 2021, so—

[KIDWELL'S COUNSEL]: I was of the belief that [Schultz] was actually doing reconciliation counseling, I though that she was, so that's a substantial change in circumstances from what we thought[.]

[BRYANT'S COUNSEL]: What did you think?

[KIDWELL'S COUNSEL]: We thought that the reconciliation counseling was actually, you know, ongoing[.]

[BRYANT'S COUNSEL]: Oh, that's not true.

THE COURT: Okay. Well, I've considered all of that, and I'm finding that you did agree to the restriction of the parenting time, and I'm denying your motion for the parenting time until the reconciliation counseling occurs, so that can be put in the order."

¶ 26    On October 20, 2020, the trial court entered an order reading as follows:

"1. [Kidwell] and the Defendant, [Bryant], shall cooperate with their child's counselor at the Family Service Agency of De Kalb County to prepare their child for reunification counseling with Dr. Braden so that it can start on February 24, 2021, if not sooner.

2. [Kidwell's] Motion For Hearing Or In The Alternative Resumption of Parenting Time is denied over objection.

3. [Kidwell] shall have no parenting time with the parties' minor child until further Order of the Court. This paragraph is added over [Kidwell's] objection.

4. [Kidwell] shall have contact with the parties' minor child as deemed necessary and appropriate by Dr. Braden as part of the reunification process. This paragraph is added over [Kidwell's] objection."

¶ 27 On March 17, 2021, Kidwell filed a motion for evaluation of the parties pursuant to section 604.10 of the Act. He requested that the trial court appoint Dr. David Finn as an evaluator to investigate "the reasonableness and path forward of reconciliation between Father and his daughter, parental alienation and /or trauma of the minor child and what treatments, if any, are to be applied in order to assist the child and the Father in reconciling their relationship." The motion alleged that reconciliation counseling had not proceeded based on the GAL's recommendations, which were based on Dr. Braden's recommendations, which were based on a statement by Megan Schultz that "it would not be in the child's best interests to undergo reconciliation counseling." Kidwell further averred that

"Nothing is known about [Schultz's] recommendation that reconciliation counseling with the Father would be harmful to the child beyond that mere conclusion. No methodology has been disclosed, no facts have been stated and [Schultz] was originally opposed to reconciliation counseling, believing it would harm her relationship with the minor child to the extent where the counselor was given the ultimatum to either begin the reconciliation counseling or be discharged from the reconciliation counseling.

\*\*\*

Father had done all things that have been requested of him and the Mother of his

child has continued to interfere with his relationship with the minor child."

Kidwell's motion finally averred that he agreed to the February 24, 2020, order, "on the good faith belief that reconciliation counseling would take place. He did not agree to restricted parenting time in order to never see his child again and never have his day in court."

¶ 28    On April 7, 2021, Bryant filed a response to Kidwell's motion for evaluation of the parties, stating that the trial court should deny the appointment of Dr. Finn because "[t]he minor child has been interviewed by multiple professionals already, and being interviewed by Dr. Finn or others will force the minor child to relive the trauma that led to the cessation of [Kidwell's] parenting time with her."

¶ 29    On April 12, 2021, Kidwell filed a motion for relief in the alternative, requesting that the trial court order the parties to attend reconciliation counseling with Dr. Finn, or allow Dr. Finn "to do a smaller investigation to place recommendations before the Court for the ultimate reconciliation of the child and the father and require [Bryant] to attend counseling[.]"

¶ 30    On April 30, 2021, Kidwell filed a petition for rule to show cause. The petition stated that the February 24, 2020, order agreed to put reconciliation counseling on hold "based on the premise that [K.K.] would attend weekly counseling and that [K.K.] would be made ready for reconciliation counseling." Kidwell averred that K.K had not engaged in weekly counseling and cited a March 30, 2020, letter sent to Dr. Braden that read "Megan Schultz has determined that counseling every other week is sufficient." Kidwell further stated that on April 15, 2020, Bryant informed him that "[K.K.] is attending counseling sessions with Megan Schultz every other week." In May 2020 Bryant informed Kidwell that "[K.K.] continues to attend counseling sessions with Megan Schultz every other week." Kidwell stated that he was unable to find a record of any counseling in July

2020. From August 2020 through November 2020 Kidwell was informed that K.K. was only receiving counseling twice per month. On December 30, 2020, Kidwell was informed by the GAL that K.K. had not seen the counselor "in at least three weeks," On January 26, 2021, Kidwell was informed that K.K. would see her counselor three times in that month. On February 9, 2021, Kidwell was informed that K.K. would see her counselor only two times in that month. On March 10, 2021, Kidwell was informed that K.K. would receive no counseling for the month. The petition requested the trial court require Bryant to show cause as to why she should not be held in contempt for willing defiance of the February 24, 2020, order.

¶ 31    On May 17, 2021, Bryant filed her response to Kidwell's petition for rule to show cause. Bryant admitted that weekly counseling ceased sometime around March 2020 as Megan Schultz determined that twice monthly counseling was sufficient. She denied being in defiance of the February 24, 2020, order because the change in the counseling schedule was done "at the recommendation of the child's counselor, Megan Schultz."

¶ 32    On June 10, 2021, following a hearing, the trial court entered an order granting Kidwell's motion for evaluation of the parties, in part. Dr. Finn was appointed as the 604.10 evaluator and both parties were ordered to comply with the signing of all waivers and requests for documents. Dr. Finn's appointment was ordered "to determine the scope and extent of reunification counseling and/or reunification of the child and [Kidwell]; and if it is in the child's best interests for said reunification and/or reunification counseling can proceed."

¶ 33    On June 28, 2021, Bryant filed a petition for evaluation pursuant to section 604.10 of the Act, requesting the appointment of Dr. March Drummond to determine if reunification counseling was in the best interest of K.K. On July 2, 2021, an agreed order was entered appointing Dr. Drummond as an evaluator pursuant to the Act.

¶ 34    On October 15, 2021, Kidwell filed a motion for abuse of allocated parenting time pursuant to section 607.5 of the Act. The motion alleged that there had been no movement toward reconciliation counseling and cited a September 30, 2021, letter sent to Kidwell by Bryant. The letter stated that "After a two-month hiatus due to her involvement in volleyball, [K.K.] will resume counseling with Megan Schultz." Kidwell alleged that there was no request from Bryant for counseling to be suspended for any reason prior to the two-month hiatus.

¶ 35    On November 16, 2021, Bryant filed her response to Kidwell's motion for abuse of allocated parenting time. She admitted that K.K. had taken a two-month hiatus from counseling to participate in volleyball but stated that "Megan Schultz informed her and [K.K.] she would not conduct any counseling sessions after 4:30 PM, as she had in the past." This interfered with the volleyball schedule. Bryant stated that she notified the GAL that K.K. would not attend counseling sessions during the two-month volleyball season.

¶ 36    On November 30, 2021, following a hearing, the trial court issued an order denying Kidwell's motion for abuse of parenting time, without prejudice.

¶ 37    Kidwell's December 13, 2018, motion for reconciliation counseling finally proceeded to trial on February 27, 2023, before Judge Stephanie Klein. The parties agreed that the scope of hearing would be limited to whether reunification counseling would proceed.

¶ 38    Kidwell, Bryant, Robert Kidwell (Kidwell's father), and Candy Anderson (Bryant's mother) all testified in a largely duplicative manner as to the events surrounding K.K.'s final visit with her father in July 2018. Robert Kidwell drove Kidwell to Bryant's home on July 6, 2018, to pick up K.K. for his weekend parenting time. When he entered the house, K.K. came into the kitchen and began to cry hysterically. Bryant asked K.K. what was wrong, but K.K. would only say that she did not want to go with her father. Kidwell agreed that he would not take K.K. with

him for that weekend. On July 20, 2018, Kidwell returned to Bryant's home to pick up K.K. for his weekend parenting time. Upon arriving, K.K. was crying again and saying that she did not want to go with her father. K.K. did not return with her father to his parents' home for visitation, but did accompany Kidwell and his mother on that Saturday for back-to-school shopping.

¶ 39 Bryant testified that K.K. told her that she did not want to go with her father for the weekend because she felt unsafe. Kidwell testified that he contacted police and made a report after Bryant refused to allow K.K. to visit. Police contacted Bryant, who told the investigating officer about K.K.'s crying about going with her father, as well as her statement that she felt unsafe with him.

¶ 40 Two victim-sensitive interviews with K.K. were conducted. During the second interview, K.K. said that Kidwell slept in the same room with her during one weekend. She said Kidwell rubbed her stomach and tried to touch her "private parts." Kidwell acknowledged in his testimony that he did sleep in the same room with K.K. during weekend visits when his brother was at his parents' house. Robert Kidwell testified that Kidwell slept on a mattress in K.K.'s room during the one or two weekends in 2017 when Kidwell's brother was at the house.

¶ 41 DCFS closed their investigation into the matter as "unfounded." No criminal charges were filed against Kidwell.

¶ 42 Kidwell testified he met with Daniel Klein on a couple of occasions to begin the reconciliation process. However, Kidwell did not get along with Klein and refused his suggestion to write a letter to K.K. as part of the reconciliation process. Thereafter, the parties attempted reconciliation counseling with Dr. Jayne Braden. Braden declined to advance the reconciliation counseling based on information she received from Megan Schultz.

¶ 43    Kidwell denied rubbing K.K.'s stomach or touching her "private parts." He acknowledged a history of substance abuse and a conviction for felony domestic battery. He testified that he had been sober for several years after completing substance abuse treatment.

¶ 44    Bryant testified that she did not know what, if anything, happened regarding the July 2018 incident between Kidwell and K.K. She stated that K.K.'s demeanor changed following that time period and she became withdrawn and changed her style of clothing to less colorful items. She believed that K.K. had returned to a more cheerful demeanor since beginning counseling.

¶ 45    Dr. Finn testified that it was his opinion that Bryant was acting as a restrictive gatekeeper and alienating K.K. from Kidwell. He believed that reconciliation counseling should begin immediately.

¶ 46    Dr. Drummond testified that he disagreed with Dr. Finn's assessment as to Bryant. He opined that Kidwell had areas of clinical concern based on the psychological testing he administered to him. Of particular concern to Dr. Drummond was that Kidwell's testing indicated an inability to identify proper sexual boundaries between himself and a child. He did not believe reconciliation counseling should proceed at that time but did opine that it could be reevaluated in the future. He recommended that Kidwell undergo a full psychological evaluation.

¶ 47    Dr. Finn disagreed with the results of Dr. Drummond's tests. He did not believe that Kidwell had an inability to determine proper sexual boundaries between himself and a child.

¶ 48    Julie Swanson Haggard, K.K.'s GAL, testified that Megan Schultz did not recommend reconciliation counseling. She relayed Dr. Braden's opinion that reconciliation counseling would do more harm than good for K.K. She testified that K.K. does not want to have any contact with Kidwell. As to Kidwell's refusal to write a letter of apology to K.K. as suggested by Daniel Klein,

Haggard testified that Kidwell refused to say something that he did not do. Haggard recommended to the trial court that reconciliation counseling begin immediately.

¶ 49    The trial court made the following findings before issuing its denial of Kidwell's motion for reconciliation counseling:

"The Court has the statutory authority to order counseling for the child, and/or family counseling for one or more of the parties and the child under 750 ILCS 5/607.6 if the Court finds one or more of the following: (1) both parents or all parties agree to the order; (2) the child's physical health is endangered or that the child's emotional development is impaired; (3) abuse of allocated parenting time under Section 607.5 has occurred; or (4) one or both of the parties have violated the allocation judgment with regard to conduct affecting or in the presence of the child. In considering the statutory factors, the entirety of the evidence and the arguments of counsels, the Court finds as follows:

**Factor (1): Both parents or all parties agree to the order.**

The Court does not find that both parents or all parties agree to the order.

**Factor (2): The child's physical health is endangered or that the child's emotional development is impaired.**

The court does not find that K.K.'s physical health is endangered by not engaging in reconciliation counseling.

Dr. Finn opined that K.K. is and continues to suffer emotional harm *** due to estrangement from her father and that it is in her best interest to begin reconciliation counseling. Dr. Drummond opined that reconciliation counseling was not recommended at this time. Dr. Braden opined that reconciliation counseling would do more harm than good to K.K. In light of these opinions as well as all of the other evidence introduced, the Court

does not find that K.K.'s emotional development is impaired by not engaging in reconciliation counseling.

**Factor (3): Abuse of allocated parenting time under Section 607.5 has occurred.**

The Court notes that abuse of allocated parenting time under Section 607.5 addresses parents who are not complying with the terms and conditions of an allocation judgment; it is not intended to address claims of child abuse allegedly occurring during parenting time. Typically, it is the mechanism that is utilized when one parent fails to produce a child for the other parent's parenting time. While Kidwell did not have his court ordered visitation with K.K. beginning on or about July 6, 2018, based upon the totality of the evidence before this Court, the Court does not find that Bryant committed an abuse of allocated parenting time.

The Court also does not find that Kidwell committed an abuse of allocated parenting time in that he did not cause Bryant to miss any of her scheduled parenting time with K.K.

The Court does not find that an abuse of parenting time under Section 607.5 has occurred.

**Factor (4): One or both of the parties have violated the allocation judgment with regard to conduct affecting or in the presence of the child.**

There is not an allocation judgment in this case; however there are Court orders establishing visitation time for Kidwell with K.K. Each and every order entered in this case granting Kidwell visitation with his daughter K.K. required that his visitation be supervised by his parents. Yet Kidwell and his father both testified that on at least 1-2 overnight

weekend visits, Kidwell slept in the same room as K.K. while his parents slept in a different room. The Court finds that Kidwell violated the conditions of his visitation with conduct that affected K.K. by virtue of this sleeping arrangement. If this had not occurred; if the visitation had in fact been supervised as it [was] ordered to have been, it would not have been possible for the allegations to have arisen, or, if they did arise, they would be easily disproven.

The Court finds that this factor has been established.

*** Having found that one of the four factors has been established, Section 607.6 permits the Court to order counseling. In this particular case, it is requested that the Court order reconciliation counseling. This Motion has been pending since 2018, and the parties have made efforts towards reconciliation counseling since the events of 2018. K.K. is now 14 years old and, per the testimony of the GAL, has no wish to participate in reconciliation counseling. The Court does afford the wishes of K.K. some weight but her wishes are but one factor considered by the Court.

*** In considering the totality of the evidence introduced, the Court notes that after five years, two failed attempts at reconciliation counseling, an opinion by one reconciliation counselor (Dr. Braden) that reconciliation counseling would do more harm than good to K.K., an opinion by K.K.'s counselor that reconciliation counseling should not take place, an opinion by Dr. Drummond that reconciliation counseling was not recommended at this time, and that there is no evidence that a third attempt at reconciliation counseling would progress any further than the two prior attempts."

¶ 50   Kidwell timely filed this appeal. After receiving the record and the parties' briefs, on October 17, 2023, this court, on its own motion, ordered the record supplemented with the reports

of proceedings from two hearing dates in the underlying proceedings. This court then held oral argument on November 29, 2023, before issuing this dispositional order.

¶ 51                                    II. ANALYSIS

¶ 52    Kidwell contends that the trial court, in denying his motion for reconciliation counseling because it applied the wrong standard pursuant to section 607.6(a) of the Act (750 ILCS 5/607.6(a) (West 2022)). Kidwell further contends that the trial court failed to conduct a hearing and make requisite findings pursuant to section 603.10(b) of the Act (750 ILCS 5/603.10(b) (West 2022)) in denying his motion for hearing or in the alternative resumption of parenting time.

¶ 53    Before delving into our analysis, we must first address Bryant's argument that this court lacks jurisdiction to entertain Kidwell's second contention challenging the trial court's October 20, 2020, order denying his motion for hearing or in the alternative resumption of parenting time without conducting a hearing. Bryant argues that Kidwell did not appeal the October 20, 2020, order within 30 days as required by Rule 303. Therefore, Bryant avers, Kidwell's motion for hearing or in the alternative resumption of parenting was not still pending when he filed the present appeal. We disagree.

¶ 54    Rule 303(a)(1) states as follows:

        "The notice of appeal must be filed with the clerk of the circuit court within 30 days
        after the entry of the final judgment appealed from, or, if a timely posttrial motion directed
        against the judgment is filed, whether in a jury or a nonjury case, within 30 days after the
        entry of the order disposing of the last pending postjudgment motion directed against that
        judgment or order, irrespective of whether the circuit court had entered a series of final
        orders that were modified pursuant to postjudgment motions. A judgment or order is not
        final and appealable while a Rule 137 claim remains pending unless the court enters a

finding pursuant to Rule 304(a). A notice of appeal filed after the court announces a decision, but before the entry of the judgment or order, is treated as filed on the date of and after the entry of the judgment or order. The notice of appeal may be filed by any party or by any attorney representing the party appealing, regardless of whether that attorney has filed an appearance in the circuit court case being appealed." IL. S. Ct. R. 303(a)(1) (eff. July 1, 2017).

¶ 55   In the present case, Kidwell filed his motion for reconciliation counseling on December 13, 2018. He subsequently filed the motion for hearing or in the alternative resumption of parenting time on August 6, 2020, and the trial court denied the motion on October 20, 2020. The trial court ultimately denied the motion for reconciliation counseling on June 13, 2023, before Kidwell filed the instant appeal. As the December 13, 2018, motion for reconciliation counseling remained pending on October 20, 2020. The trial court's October 20, 2020, denial of Kidwell's motion for hearing or in the alternative resumption of parenting time was not final and appealable until June 13, 2023. See IL. S. Ct. R. 303(a)(1) (eff. July 1, 2017). All pending claims were resolved by the trial court's June 13, 2023, order. Therefore, this court has jurisdiction over Kidwell's contentions in this appeal. See *In re Marriage of Valkiunas and Olsen*, 389 Ill. App. 3d 965, 968 (2008).

¶ 56   We begin with Kidwell's contention that the trial court erred in denying his motion for hearing or in the alternative resumption of parenting time. Kidwell maintains that the trial court suspended his parenting time without a hearing on December 7, 2018, and October 20, 2020.  He argues that section 603.10(b) of the Act (750 ILCS 5/603.10 (West 2022)) required the trial court to conduct a hearing before modifying his parenting time with K.K.

¶ 57   The resolution of this issue involves a question of statutory construction, a question of law that is subject to *de novo* review. *In re Marriage of Flannery*, 328 Ill. App. 3d 602, 605 (2002).

The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Id*. The best indication of the legislature's intent is the plain language of the statute. *Id*. at 605-06.

¶ 58    Section 603.10(b) of the Act states as follows:

"(b) The court may modify an order restricting parental responsibilities if, after a hearing, the court finds by a preponderance of the evidence that a modification is in the child's best interests based on (i) a change of circumstances that occurred after the entry of an order restricting parental responsibilities; or (ii) conduct of which the court was previously unaware that seriously endangers the child. In determining whether to modify an order under this subsection, the court must consider factors that include, but need not be limited to, the following:

(1) abuse, neglect, or abandonment of the child;

(2) abusing or allowing abuse of another person that had an impact upon the child;

(3) use of drugs, alcohol, or any other substance in a way that interferes with the parent's ability to perform caretaking functions with respect to the child; and

(4) persistent continuing interference with the other parent's access to the child, except for actions taken with a reasonable, good-faith belief that they are necessary to protect the child's safety pending adjudication of the facts underlying that belief, provided that the interfering parent initiates a proceeding to determine those facts as soon as practicable." 750 ILCS 5/603.10(b) (West 2020).

¶ 59    The Act defines "restriction of parenting time" as "any limitation or condition placed on parenting time, including supervision." 750 ILCS 5/600(i) (West 2020). The parties' agreed judgment for parentage of K.K. states that Kidwell would have visitation with K.K. every other

weekend and that "visitation with [K.K.] shall be supervised by his parents." In other words, Kidwell was subject to a restriction of parenting time on December 7, 2018, when the trial court entered its first order suspending his parenting time until December 17, 2018, and a hearing pursuant to section 603.10(b) was required.

¶ 60    In neither Bryant's October 3, 2018, petition to suspend parenting time nor at the hearing on December 7, 2018, was the relevant statutory authority even mentioned. The hearing concentrated almost entirely on the status of the DCFS investigation that all parties knew at that point was going to be "unfounded." Instead of conducting the requisite hearing contemplated in section 603.10(b), the trial court suspended Kidwell's parenting time *sua sponte* until December 17, 2018, and appointed a GAL for the limited purpose of "talk[ing] to the child to give the child a voice," so "[t]he child can say what her thoughts are on the parenting time." While both parties agreed that a GAL should be appointed, the trial court's failure to conduct a hearing pursuant to section 603.10(b) was error. See *In re Marriage of Flannery*, 328 Ill. App 3d at 609 (it is error for the trial court to proceed without a hearing when statutory authority requires it to do so).

¶ 61    In his August 6, 2020, motion for hearing or in the alternative resumption of parenting time, Kidwell specifically cited section 603.10(b) of the Act (see 750 ILCS 5/603.10(b) (West 2020)) as his parenting time had been suspended without a hearing and over his objection since December 7, 2018. The motion further alleged that no progress towards reunification with K.K. had taken place since the entry of the February 24, 2020, agreed order.

¶ 62    On October 19, 2020, the trial court denied Kidwell's counsel's demand for a hearing on his motion for hearing or in the alternative resumption of parenting time over Kidwell's objection. The trial court ruled that Kidwell had waived the right to such a hearing by entering into the agreed order of February 24, 2020, delaying reconciliation counseling until no later than February 24,

2021. Kidwell's counsel expressed numerous reasons for her belief that Bryant was not adhering to the strictures of the agreed order and would not be cooperating in the future. The record supports that belief. K.K. had not been attending weekly counseling because Megan Schultz allegedly said that she did not have to. We can find no order in the record granting such power to Schultz. Following the entry of the agreed order, at least eight orders were entered continuing the matter for status on counseling. At the October 19, 2020, hearing, it was clear that no progress had been made towards the preparation of K.K. for reunification counseling because, again, Megan Shultz deemed her to be not ready yet. While Kidwell did agree to the restriction of his parenting time in the February 24, 2020, order, he was entitled to a hearing pursuant to section 603.10(b) of the Act (see 750 ILCS 5/603.10(b) (West 2020)) when it became evident that Bryant was in violation of the agreement. Indeed, February 24, 2021, came and went with no further progress towards reconciliation counseling.

¶ 63    For the same reasons we articulated above regarding the trial court's error in failing to conduct a hearing pursuant to section 603.10(b) of the Act (see 750 ILCS 5/603.10(b) (West 2020)) on December 7, 2018, so, too, do we find error with the trial court's denial of Kidwell's motion for hearing or in the alternative resumption of parenting time on October 20, 2020. Both of those orders are hereby vacated and the matter is remanded to the trial court to conduct the requisite hearing per the relevant statutory authority.

¶ 64    We now move to Kidwell's contention that the trial court erred in denying his motion for reconciliation counseling because it applied the wrong standard pursuant to section 607.6(a)(2) of the Act (750 ILCS 5/607.6(a)(2) (West 2022)). Kidwell takes issue with the trial court's findings regarding section 607.6(a)(2), which states that the trial court may order counseling if it finds "the child's physical health is endangered or that the child's emotional development is impaired[.]" 750

ILCS 5/607.6(a)(2) (West 2020). The trial court stated that it "does not find that K.K.'s physical health is endangered by not engaging in reconciliation counseling," and that it "does not find that K.K.'s emotional development is impaired by not engaging in reconciliation counseling." Kidwell maintains that the trial court's addition of the words "by not engaging in reconciliation counseling" was impermissible and reversible error.

¶ 65    Section 607.6(a) of the Act provides as follows:

"(a) The court may order individual counseling for the child, family counseling for one or more of the parties and the child, or parental education for one or more of the parties, if it finds one or more of the following:

(1) both parents or all parties agree to the order;

(2) the child's physical health is endangered or that the child's emotional development is impaired;

(3) abuse of allocated parenting time under Section 607.5 has occurred; or

(4) one or both of the parties have violated the allocation judgment with regard to conduct affecting or in the presence of the child." 750 ILCS 5/607.6(a) (West 2020).

¶ 66    Based on the language used by the trial court in making its findings pursuant to section 607.6 of the Act, we find that it applied the wrong standard. Relevant here, section 607.6 allows the trial court to order counseling if it finds "the child's physical health is endangered or that the child's emotional development is impaired[.]" 750 ILCS 5/607.6(a)(2) (West 2020). The trial court's addition of "by not engaging in reconciliation counseling" changes the standard articulated in the statute. When the trial court is found to have applied the wrong standard, the reviewing court reverses the trial court's judgment. See *In re Haley D.*, 2011 IL 110886, ¶ 68. Therefore, we

reverse the trial court's June 13, 2023, order, denying Kidwell's motion for reconciliation counseling.

¶ 67    Our review of the record in this case reveals that four judges presided over the various matters from the entry of the 2015 parentage order through the 2023 denial of Kidwell's motion for reconciliation counseling. It is evident from reading the orders and transcripts that there was a total disconnect in the judges' understanding of what was going on at each step in the litigation. We recognize that a trial judge is not bound by the prior orders of another judge. See *Peoples Gas Light & Coke Co. v. Austin*, 147 Ill. App. 3d 26, 32 (1986). However, a trial judge is obligated to review prior orders if changed circumstances make the prior order unjust. *Id*. Instead, in the underlying case, after the trial court improperly suspended Kidwell's parenting time without a hearing in December 2018, no progress towards the resumption of parenting time occurred and a culture of continuances incurred.

¶ 68    Kidwell was never afforded a hearing after Bryant moved to suspend his parenting time back in 2018, even though the trial court was aware that DCFS had deemed Bryant's complaint to be unfounded. When the trial court's December 7, 2018, order expired on December 17, 2018, it is unclear why the issue of reinstatement of Kidwell's parenting time was not immediately addressed. When the trial court ruled on Kidwell's motion for reconciliation in 2023, it made findings on abuse of allocated parenting time with no mention of the fact that Kidwell's parenting time had been suspended without explanation for nearly five years. While this court cannot unwind the passage of years, we can afford Kidwell the opportunity for his motion for hearing or in the alternative resumption of parenting time heard properly for the first time as required by Illinois law. See 750 ILCS 5/603.10(b) (West 2020).

¶ 69                              III. CONCLUSION

¶ 70    Based on the foregoing, this court hereby vacates the orders of December 7, 2018, and October 20, 2020, and remands the matter to the trial court for hearing on Kidwell's motion for hearing or in the alternative resumption of parenting time. Further, this court reverses the June 13, 2023, order denying Kidwell's motion for reconciliation counseling. The trial court is reminded that this case is accelerated by Rule 311. See IL. S. Ct. R. 311(a) (eff. July 1, 2018). Therefore, this matter should be set for hearing immediately following the issuance of the mandate.

¶ 71    Vacated in part, reversed in part, and remanded with instructions.